## The State v. Albert Holmes, Appellant.

### Division Two, December 20, 1926.

1. **INFORMATION: Robbery.** The information set out in full in the opinion sufficiently charges robbery in the first degree.

2. **DISCHARGE OF JURY: Irresponsive Answer to Proper Question.** A jury should not be discharged because a witness, without any connivance of the prosecuting attorney, has made a hurtful answer to a proper question, where the court has directed them to disregard the answer. In the trial of defendant, separately charged with robbery, wherein the husband of the woman robbed had testified that he was present and actually saw defendant and another commit the robbery, and the husband was asked who such other was and replied that "he is in the pen now," and on the request of defendant's counsel the court directed the jury to disregard the answer, the court did not err in refusing to discharge the jury on account of said answer, the question being proper, and the State being in no wise responsible for the irresponsive answer.

3. **IMPROPER QUESTION: Objection after Answer: Name of Robber: Identification: Res Gestae.** An objection after the alleged improper question has been answered comes too late. Where the defendant was separately charged with robbery, and the husband of the woman robbed was present and saw defendant and another rob her, and in his testimony named such other as "Kaplan," and was asked, Who is Kaplan? and answered, He is the other fellow who was with defendant, and was then asked, "He is the other robber?" and answered, "Yes," an objection to any reference to Kaplan because defendant was separately charged came too late, and besides the question itself was not reversible error, because all that occurred at the place of the robbery was a part of the res gestae and it was proper for the witness to inform the jury of the names of the robbers, and the question called for their identification.

4. **WITNESS: Name Not Indorsed on Information.** An objection to a witness whose name is not indorsed on the information should be made each time he is offered. Where the court, in the trial of defendant for first degree robbery, sustained an objection to a witness on the ground that his name had not been indorsed on the information and on the further ground that counsel for defendant had not been able to ascertain whether the reputation of the witness was good or bad, and later in the trial the witness was again produced and testified without objection that he bought a diamond ring from defendant and saw him sell another diamond ring to another person, and that these rings were turned over to the officers and by them to the woman robbed, no error was committed in permitting such witness to testify; and particularly so, where the defendant then produced witnesses who testified that the witness had a bad reputation. If the defendant wished to contest the right of the witness to testify he should have objected when he was a second time offered as a witness.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 1050, p. 548, n. 48; Section 1114, p. 572, n. 32; p. 573, n. 36; Section 2029, p. 798, n. 76; Section 2195, p. 874, n. 99, 3; 17 C. J., Section 3653, p. 307, n. 44; Section 3662, p. 317, n. 10; Section 3667, p. 326, n. 80. Robbery, 34 Cyc., p. 1802, n. 38; p. 1808, n. 78.

Appeal from Jackson Circuit Court.—*Hon. Nelson E. Johnson,* Judge.

AFFIRMED.

*J. Francis O'Sullivan* and *Isadore Rich* for appellant.

(1)   The court erred in refusing to discharge the jury and continue the cause after numerous prejudicial answers and statements had been made by the witnesses, which answers and statements were so prejudicial in their nature that the mere sustaining of defendant's objections and their being stricken from the record did not suffice. (a)   It was error to show the conviction of the co-defendant charged separately with the same offense.  16 C. J. 670, secs. 1341, 1342; State v. Ross, 29 Mo. 32; State v. Sadowiski, 256 S. W. 755. . (b). The court erred in permitting evidence and conclusions relating to the· extra-judicial confession of the alleged accomplice separately charged with the same offense.  State v. Frisby, 204 S. W. 4; State v. Forshee, 199 Mo. 145; State v. Schaeffer, 172 Mo. 235; State v. Kennedy, 154 Mo. 268; State v. Flanders, 118 Mo. 236; State v. Hilderbrand, 105 Mo. 318; State v. Beaucleigh, 92 Mo. 490; State v. McGraw, 87 Mo. 161; State v. Barnum, 82 Mo. 67; State v. Brennan, 164 Mo. 509; State v. Levy, 168 Mo. 521; State v. Hays, 249 S. W. 51.   (2)   The court erred in permitting the State's witness Demarea to testify over the objection and exception of the defendant, when his name did not appear as a witness on the indictment.

*North T. Gentry*, Attorney-General, and *A. M. Meyer*, Special Assistant Attorney-General, for respondent.

(1)   The information is sufficient.  It avers every element of the crime of robbery in the first degree and contains the necessary allegations classifying the crime.  Sec. 3307, R. S. 1919; State v. Strada, 274 S. W. 34; State v. Affronti, 292 Mo. 53; State v. Dickens, 285 S. W. 447.   (2)   The evidence of the State was ample upon every phase of the crime.  The assault and the asportation, with their incidents, were established by two eyewitnesses; the defendant was positively identified by both witnesses, both at the police station and at the trial.  This identification was corroborated by the card taken from the defendant at the time of his arrest, bearing the address and telephone number of the prosecuting witness and the address and telephone number of the apartment house to which prosecuting witness and her husband were lured and robbed; and by the evidence of the witness Demarea and the police officers showing that defendant disposed of some of the stolen property to witness and others.  State v. Van Valkenburgh, 285 S. W. 979.   (3)   Whether a witness, whose name was not indorsed upon the information before trial, shall be permitted to testify, is discretionary with the trial court, and under

the circumstances its ruling in the premises will not be disturbed. State v. Roy, 83 Mo. 268; State v. Grady, 84 Mo. 220; State v. O'Day, 89 Mo. 559; State v. Steifel, 106 Mo. 129; State v. Nettles, 153 Mo. 469; State v. Henderson, 186 Mo. 482; State v. Barrington, 198 Mo. 66; State v. Myers, 198 Mo. 243; State v. Lawson, 239 Mo. 594. (4) Alleged prejudicial statements by State's witnesses consisted of a statement by the witness Pugh. In detailing the circumstances of the robbery he mentioned defendant and "Kaplan," and in answer to the question, Who is Kaplan? said "He is in the pen now." Upon objection of defendant, the court instructed the jury to disregard the answer. There is no showing that the witness's error was born of anything save misunderstanding. The judgment should not be reversed on this ground. State v. Jackson, 267 S. W. 857; State v. Murphy, 292 Mo. 295.

RAILEY, C.—On May 1, 1925, a verified information was filed in the Circuit Court of Jackson County, which, omitting formal matters, reads as follows:

"Now comes Alpha N. Brown, Assistant Prosecuting Attorney for the State of Missouri, in and for the body of the County of Jackson, and upon his oath informs the court, that Albert Holmes, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on the 28th day of February, 1925, at the County of Jackson, State of Missouri, with force and arms, in and upon one Ethel Pugh unlawfully and feloniously did make an assault, and one diamond ring, white gold setting, of the value of $500, one diamond ring (gold) of the value of $400, one diamond ring (gold) of the value of $275, one diamond ring (gold) of the value of $150, one black onyx ring of the value of $15, one gold wedding ring of the value of $10, twenty dollars in good and lawful money of the United States of the value of twenty dollars, of the aggregate value of thirteen hundred and seventy dollars, the money and personal property of the said Ethel Pugh, from the person and against the will of the said Ethel Pugh, then and there, by force and violence to the person of the said Ethel Pugh and by putting the said Ethel Pugh in fear of an immediate injury to his person, feloniously did rob, steal and carry away; against the peace and dignity of the State."

On May 2, 1925, defendant entered his plea of not guilty. On May 20, 1925, a trial was had before a jury, and the latter returned the following verdict:

"We, the jury, find the defendant Albert Holmes guilty of robbery in the first degree as charged in the information and assess his punishment at five years in the State Penitentiary."

Thereafter, defendant filed motions for a new trial and in arrest of judgment, both of which were overruled. On June 30, 1925, allocution was granted, judgment rendered, sentence pronounced in conformity with the verdict, and an appeal allowed defendant to this court.

The evidence of the State as shown by the record is substantially as follows:

Albert W. Pugh testified that he was in the hotel business at 1600 Jarboe Street, in Kansas City, on February 28, 1925, at the date of the alleged robbery; that while eating supper he recieved a telephone call to come to the apartments at 1223 Paseo, on which he had a lease; that he and his wife got in his car and drove to the above apartments; that two men and the porter were in the hall; that these two men were looking at the apartment for the supposed purpose of renting it; that he asked the porter why he didn't rent the apartment; that these men stated they wanted to change and rearrange some of the furnishing in the apartment, and would like to go up to the third floor and suggest what changes they desired made; that they went up on the third floor and looked at a vacant apartment, and defendant asked to see the kitchen. He asked Pugh to turn the light on so he could see, which Pugh did; that as Pugh turned around, defendant punched a gun in his stomach and told him to hold up his hands; that at the same time the other fellow drew the gun on his wife; that he was in plain view and could see what was done; that Kaplan—the other man—turned on the light in the main room; that defendant took from him $200 in money, a diamond ring, his watch chain and knife; that after defendant took the above things from Pugh, he went to the assistance of Kaplan who was getting the rings off his wife's fingers; that his wife was resisting, and defendant helped strip them off; that the robbers told Pugh and wife not to make any noise for fifteen minutes; that defendant then grabbed the pocket book off his wife's arm, broke the strap, took the money and valuable property from same and also took from his wife's little finger a black onyx ring which Kaplan had not gotten; that the robbers then barred Pugh and wife in the kitchen and left; that he (Pugh) broke the door open, hallooed as soon as he could and saw defendant and Kaplan run down the stairs, get in a car, which was running, and drive north on Twelfth Street; that the above apartment, No. 1223, is in Jackson County, Missouri; that he next saw defendant in the show-up room at Police Headquarters; that he identified defendant as one of the men who robbed him; that his wife received part of her stolen things back from Toyne, chief of detectives, at police headquarters.

Mrs. Ethel Pugh testified as a witness, and corroborated her husband, the preceding witness, as to the details of the robbery.

Edwin L. Kellerstraus testified for the State in substance as follows: That he was a police officer, and assigned to the detective department; that he and two other detectives, named Weaver and Phipps, arrested defendant with a companion in the Washington Hotel; that they found a coat which corresponded with the remainder of the suit worn by defendant at the time; that defendant put on this coat and wore it to the police station; that they found in defendant's room a card, which was introduced in evidence; that there was written on this card in long hand the address and telephone number of both the residence of witness Pugh and his apartment where the robbery occurred; that this card was taken from defendant's coat above mentioned, or from a grip or hand-bag found in defendant's room; that none of the above officers had a search warrant when defendant was arrested.

Frank Demarea testified, for the State, that defendant came to his restaurant at Fifth Street and Walnut and sold him a woman's diamond ring for $140; that defendant sold another diamond ring to a bystander. Both of these rings were later turned over to the police and restored to Mrs. Pugh, according to the testimony of the police officers.

The defendant was using a cane at the time of his visit to Demarea's restaurant, and Dr. O. F. Reiseman, a practicing physician, testified that at the instance of defendant, in February or March, he treated him for a sprained ankle.

The testimony for defendant was as follows:

Hugh C. Meyers, a police sergeant, testified that the general reputation of Frank Demarea for honesty and veracity was bad.

The defendant testified as a witness in his own behalf, that he was twenty-seven years old; that he had never been previously convicted of any crime; that he did not hold up Mrs. Pugh; that he never saw the card above mentioned until after he was arrested; that the first time he saw Demarea was at police headquarters. On cross-examination defendant admitted that he and Harry Kaplan were roommates on February 28, 1925, the day of the robbery.

The remaining questions presented in the case will be considered in the opinion.

I. Appellant's motion in arrest of judgment attacks the sufficiency of the information heretofore set out, to charge defendant with the crime of robbery in the first degree. No reasons are stated in support of said assignment. It is sufficient as to both form and substance. [State v. Flynn, 258 Mo. 1. c. 214, 167 S.
**Information.** W. 516; State v. Eddy, 199 S. W. 187; State v. Huffman, 238 S. W. 1. c. 431 and 435; State v. Affronti, 292 Mo. 53, 238 S. W. 109; State v. Yates, 252 S. W. 1. c. 644; State v. Roderman,

297 Mo. 147, 248 S. W. 965; State v. Brazel, 270 S. W. 273; State v. Strada, 274 S. W. 34; State v. Wallace, 278 S. W. 665; State v. Dickens, 285 S. W. 445 and 447.]

II.   The court is charged with error in refusing to discharge the jury at the instance of defendant on account of testimony given by State's witness Pugh, who was describing what oc-

**Discharge of Jury.** curred at the time he and his wife were robbed at the apartment.   He testified as follows:

"Q.   Could you see it all?   A.   Yes, I could see it all, because I was standing in the center of the room.   It was a one-room kitchenette, one room and bath.   Mr. Kaplan walked into the bathroom and turned the light on just after I turned on the light in the main room.

"Q.   Who is Kaplan?   A.   He is in the 'pen' now.

"MR. RICH:   I object to that, your Honor, as not responsive to the question, and ask that the jury be told to disregard that.

"THE COURT:   The jury will disregard it.

"MR. RICH:   Furthermore, your Honor, we wish further to make this objection, and that the statement and answer, though it was not responsive to any question asked by State's counsel, was and is prejudicial, and because it is necessarily prejudicial, the defendant asked at this time that the cause be continued and the jury dismissed."

The court properly overruled defendant's request to dismiss the jury and continue the case.   The question propounded to witness was a proper one.   The answer was not responsive to the question, nor does it appear from the answer of the witness that Kaplan was ever arrested or prosecuted for the above crime.   The court directed the jury, at the instance of defendant's counsel, to disregard the answer of witness.

In State v. Jackson, 267 S. W. l. c. 858, Judge BLAIR, speaking for this Division, said:   "A verdict should not be set aside for misconduct of persons in the courtroom or individuals thereof, over whom neither the court nor the prosecuting attorney has any control in advance, where there is no connivance therein on the part of the prosecuting attorney, and the trial court has instructed the jury to disregard the incident."

To the same effect is State v. Murphy, 292 Mo. l. c. 295.

The above assignment is without merit and overruled.

(a)   The examination of Pugh continued as follows:

**Belated Objection.** "Q.   By Kaplan who do you mean?   A.   He is the other fellow who was with him (defendant).

"Q.   He is the other robber?   A.   Yes, sir."

No objection was made until after the witness had answered the question, which was then too late.   He objected to any reference to Kaplan in this trial because defendant was charged by himself.

The undisputed evidence shows that two men participated in robbing Pugh and his wife. If he could do so, it was perfectly proper for witness to inform the jury as to the names of the parties who committed the crime. All that occurred at the time and place of the robbery was a part of the *res gestae*. This included the identification of both defendant and Kaplan from what the witness saw at the time of the robbery. [State v. Cruts, 288 Mo. l. c. 119 and cases cited; State v. Mitchell, 252 S. W. l. c. 385.]

(b)   On cross-examination of Mrs. Pugh, she was asked in regard to the identification by her of Randazzo. She answered that: "Kaplan confessed and told us who drove the car." This answer was objected to by counsel for appellant on the ground that it was "not the best evidence." Notwithstanding it was brought out by defendant, the court sustained his objection. He again asked the court to dismiss the jury and continue the cause, which request was refused.

**Hearsay Answer.**

The court committed no error in refusing to dismiss the jury and continue the cause.

(c)   There is not the slightest intimation in the record that counsel for the State, either directly or indirectly, attempted to get before the jury that Kaplan was arrested, prosecuted, convicted or plead guilty as to the same crime now charged against defendant Holmes. The cases cited by appellant on this subject are without the slightest application under the facts detailed in this record.

III.   It is claimed that: "The court erred in permitting the State's witness Demarea to testify over the objection and exception of the defendant, when his name did not appear as a witness on the information."

**Witness: Name on Information.**

When Demarea was offered by the State as a witness, he was objected to as a witness by appellant, on the ground that his name was not on the information. He contended that counsel for defendant had not been afforded an opportunity to talk with the witness, and that he had been unable to ascertain whether Demarea's reputation was good or bad. The court sustained defendant's objection at that time and excluded Demarea as a witness. At a later stage of the trial, Frank Demarea was examined as a witness for the State without objection, and testified that about the first or second of March, he bought a diamond ring from defendant, and saw him sell another diamond ring to another person. These rings were turned over to the officers and afterwards delivered to Mrs. Pugh. If defendant desired to contest the right of Demarea to testify, he should have promptly objected when he was again offered as a witness. He waived his right to renew his objection, and cross-examined the witness. He was not injured by the production of Demarea

again as a witness, for he produced a sergeant of the Metropolitan Police Department who testified that Demarea had a bad reputation.

The foregoing contention is devoid of the slightest merit.

IV. We have carefully gone through the record in this case, and find that the testimony as to defendant's guilt is absolutely conclusive. **Conclusion.** He has received a fair and impartial trial without reversible error upon the part of the court, and received a low punishment for his crime.

The judgment below was for the right party and is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.