**STATE of Missouri, Respondent,**

v.

**William CHILDERS, Appellant.**

No. 46420.

Supreme Court of Missouri,

Division No. 1.

June 9, 1958.

———◆———

No attorney for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Presiding Judge.

Defendant, William Childers, has appealed from a sentence of imprisonment in the State Penitentiary for a term of fifteen years imposed upon him pursuant to the verdict of a jury rendered in the Circuit Court of the City of St. Louis finding him guilty of the crime of robbery in the first degree by means of a dangerous and deadly weapon. He has filed no brief and we therefore review the assignments of error validly set forth in his motion for new trial as required by S.Ct. Rule 27.20 and the essential portions of the record as required by S.Ct. Rule 28.02, 42 V.A.M.S. State v. Dees, Mo., 276 S.W.2d 201, 203.

The evidence in behalf of the State justifies the following statement of facts:

On the night of June 22, 1956, Robert Staley was on duty as a bartender in the tavern owned by Michael Michaleh and located at the northeast corner of South Kingshighway and Juniata Streets in the City of St. Louis. South Kingshighway extends north and south; Juniata extends east and west. There are entrances to the tavern from both streets. A bar extends east and west along the north portion of the building. In the rear of that bar is a kitchen and in front of it are tables for customers.

At about 11 o'clock, Staley, the bartender, was standing back of the bar in front of the cash register. Several customers were seated upon bar stools and others were seated at tables to the south of those stools. Among the customers

seated at the bar, and near its west end, was Joseph Moose, a corporal in the St. Louis Police Department, then off duty and in civilian attire. To the east of him at the bar sat his wife and to the east of her sat their guest, Mrs. Bode; other customers sat near the east end of the bar. Two unmasked men, later identified by several of those present in the tavern as the defendant and one William Allen, also known as Bob Myers, entered the tavern. Defendant appeared to be of dark complexion, had a scar on his upper lip and wore a mustache. Allen came to the front of the bar, pointed a pistol toward Staley and directed him to place his hands upon the bar and not to move. Staley did as directed. The defendant walked to the east end of the bar and went behind it, and thence walked westward toward Staley and the cash register. Allen, still standing in front of the bar, directed Staley to move westward, which Staley did. Defendant opened the cash register and took from it $171.20, the property of Michaleh. In the meantime, Allen took the wallet of a customer seated at the east end of the bar and also took the money of a lady customer seated to the east of Mrs. Bode. When Officer Moose saw defendant walk westward behind the bar and open the cash register and saw Allen in front of the bar with a drawn pistol pointed toward him and the other customers, he realized a holdup was in progress. Moose drew a pistol from his pocket and shot Allen. Allen screamed and dropped his pistol. Defendant thereupon fired several shots from a drawn pistol at Moose, one of which struck him in the abdomen. Moose fired several shots at defendant as the latter dived below the bar, but none of the shots struck him. Defendant and Allen fled through the Juniata Street entrance and escaped. Allen had not been apprehended at trial time.

About midnight of the night of the robbery, Edward Childers, a brother of defendant, came to the home of John H. Stone and his family in East St. Louis. Stone is the husband of a sister of defend-

ant and Edward Childers. Edward Childers and Stone went out to the street, where they saw and talked with William Allen, who sat in defendant's automobile. Allen had been wounded, his arm was bandaged, and he held his stomach. In his hand he held a "thirty-eight" revolver. After some conversation, Edward Childers and Allen left. About an hour later, defendant came to Stone's home and there related to Stone in detail the manner in which he and Allen had committed the aforesaid robbery, in substance as above stated. Defendant further told Stone that after escaping he had washed dark "make-up" from his face, called a taxicab from a nearby tavern and had then come to East St. Louis. Defendant remained at Stone's home for several days during which time both Edward Childers and Allen also came there. Allen showed Stone a wound on his wrist and one near his hip. Defendant and Allen then left Stone's home, saying they were going to Kentucky.

On July 29, 1956, Corporal Moose and several of the customers who were present at the robbery identified a picture of defendant shown them by the police as one of the persons committing the robbery at the tavern on June 22, 1956. Several of them also identified a picture of Allen as bearing a close resemblance to the other man participating in the robbery. Those pictures were also shown these witnesses at the trial and again identified by them, and were introduced in evidence. Thereafter on December 17, 1956, at a police station in St. Louis, Moose and others of the customers were present when defendant (who, in the meantime, had been apprehended) was questioned by the police. They there again identified defendant as one of the participants in the robbery. They there also heard defendant say, in substance, that he could not recall the actual robbery, because he had a "blackout" on that night, but that he probably had "gone on it" because his wife, Jean Childers, insisted that he perform some robbery with Allen; that the morning after the hold-

up he woke up at John Stone's home and when he woke up he had a pistol with him and a large amount of money; and that thereafter his brother, Edward Childers, told him about his being "out on a stick-up" and that he, defendant, never did deny to his brother, Edward, that he had been "on a stick-up", and that following the "stick-up" he met Allen, with whom he left town to stay until Allen's wounds were healed. Several of the customers testified at the trial that defendant, whom they pointed out, was the man who had stood behind the bar and had fired several shots at Moose and had taken money from the cash register during the course of the robbery.

Defendant did not testify. However, Joseph Shevlin, a police magistrate in Alorton, Illinois, testified in his behalf that defendant and his brother, Donald, were in his courtroom at 9:00 p. m., on the night of the robbery to answer a charge of disorderly conduct and resistance of arrest and that Bob Myers (Allen) was to have been there to answer the same charge but did not appear, and the case was, for that reason, postponed. Phillip Richardson, a used car dealer, residing near the Alorton police station, also testified in behalf of defendant that he was a surety on defendant's bond for his appearance at the police station and was present at said station with defendant and Donald Childers on the night of the robbery; that defendant and Donald remained at the station until about 9:30 p. m., at which time they went from the station to witness' home, where defendant and Donald remained until "around eleven" o'clock, p. m.

■ The evidence is clearly sufficient to support the verdict and judgment. Consequently, the court did not err in overruling defendant's motion for a directed verdict based · upon insufficiency of the evidence filed at the close of all of the evidence.

· ■ Error is assigned in the refusal of the trial court to sustain defendant's objection to the circuit attorney's advising the jury panel on voir dire examination that it did not make any difference what the jury thought the law was or ought to be. The transcript contains no record whatever as to statements made by counsel for either party during such examination and the motion for new trial is not verified. The law is well settled that such unverified allegations of error do not prove themselves and cannot be considered unless substantiated by the record. State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774, 780; State v. Gaddy, Mo., 261 S.W.2d 65, 68. The assignment is overruled.

■ The motion for new trial assigns error in the admission in evidence of the pictures of defendant and Allen identified by the State's witnesses at police headquarters, on the grounds that they "were immaterial and irrelevant and did not tend to prove or disprove any issue in the case and no foundation [was] laid or later connected as to the origin of said pictures, and said pictures were prejudicial and numbers were across [each] picture." We are convinced that the assignment is without merit. The pictures were shown to be those identified by the witnesses at police headquarters on July 29, 1956. Throughout the trial defendant was seeking to establish that he was not the person who participated in the robbery. He sharply challenged the identification of him from the photographs shown to the witnesses at the police station and the personal identification of him after he was taken into custody by the police. The presence of the defendant in the courtroom and a viewing of his photograph by which the State's witnesses identified him as a participant in the robbery made it possible for the jury to determine the accuracy or inaccuracy of their identification of him from the photograph shown them on July 29th. The identity of Allen, whom the evidence showed defendant admitted to have been present and wounded at the robbery, made their joint identities relevant and material. No error was com-

mitted in their admission. State v. Holmes, 316 Mo. 122, 289 S.W. 904, 907.

■ The motion for new trial also assigns error in the admission of testimony of two police officers to the effect that defendant had stated to them that his brother, Edward, told him "that defendant was at the holdup and that [he, Edward,] thought defendant had been killed", upon the ground that "such testimony was hearsay and prejudicial." We think the statement is not hearsay. It was a part of the statement of defendant made in connection with his attempt to deny any knowledge of the crime due to his alleged "blackout". The fact that in making such statement defendant quoted the remark of his brother, Edward, to the effect that Edward thought defendant had been killed in the holdup does not destroy the admissibility of a statement which, in its entirety, amounted to a tacit admission that he could have been present and could have participated in the crime with which he was charged. The portion complained of was an integral and material portion of it. The court did not err in admitting the portion referred to in the assignment. State v. Francies, Mo., 295 S.W.2d 8, 14; State v. Ball, 321 Mo. 1171, 14 S.W.2d 638, 644 [6].

■■ Error is also assigned in the refusal of the court to sustain defendant's objection and grant to him a mistrial when the defendant objected to the circuit attorney's stating, in argument, that the jury could consider the police court charges filed against defendant in the magistrate court in Illinois in determining "what kind of a man the jury was dealing with" in court, for the reason that defendant had not taken the stand, his character was not put in issue by the defendant, and such argument was a comment on defendant's failure to testify. The assignment arises out of evidence brought out by defendant's counsel in his direct examination of police magistrate Shevlin. In direct response to questions propounded by counsel for defendant, Shevlin testified that defendant

and defendant's brother, Donald, were obligated under their bond to appear in his court on the night of the robbery to answer a charge of disorderly conduct arising out of a traffic violation, and that Allen also was obligated to appear at that time to answer a charge of disorderly conduct and interfering with an arrest. The argument of the circuit attorney was to the effect that the jury could consider such evidence in determining "what kind of a man you are dealing with here today." Obviously, the remark of the circuit attorney was not a comment upon the defendant's failure to testify. And, if the evidence of the charge filed against defendant in the police court did not rise to the dignity of evidence impeaching defendant's extra-judicial statement as to his "blackout" by discrediting his character, the nature of the charge was in evidence at the instance of defendant and it is difficult to see how the comment of the State's counsel could have been prejudicial. The trial court deemed it not to be and, in such matters, the court is vested with a sound discretion. Absent a reasonable showing of prejudice, we should not reverse. State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 588. In view of the highly substantial evidence of defendant's guilt, we do not believe he could have been prejudiced by such a trivial incident. The assignment is overruled.

■ A further assignment is that the trial court erred in overruling defendant's objection when, in final argument, the circuit attorney made the following statement: "He (defendant) said he had a blackout. According to law it means insanity. It can't mean anything else. * * * Insanity is a defense and there is nothing, of course, of any testimony about it in this case." The State's attorney had the right to comment on the evidence from the State's viewpoint, and whether such comment was prejudicial was within the sound discretion of the court. State v. Brooks, Mo.App., 298 S.W.2d 511, 515. Unquestionably, the statement of defendant

that he had suffered a "blackout" was meant to convey the idea that even though it be shown that he participated in the robbery he, nevertheless, was not mentally accountable for his acts. The statement of the circuit attorney referred to the testimony as a whole and was not directed to the failure of the defendant to testify in his own behalf. The conclusion of the defendant that it was a comment upon his failure to testify is not justified. State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 32; State v. Spradlin, 363 Mo. 940, 254 S.W.2d 660, 662. The court did not abuse its discretion in overruling the objection.

■ Error is also assigned to the admission in evidence of the details of the shooting of Officer Moose by the defendant and in permitting the circuit attorney to comment upon it, on the ground that such evidence related to a crime not charged in the information. Obviously, the assignment is without merit. The shooting of Officer Moose by defendant was an inseparable element of the commission of the crime of robbery by use of a deadly and dangerous weapon. " 'When a defendant in the course of the perpetration of one crime commits another, the state is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which he is not on trial, when it forms a part of the res gestae of the crime charged.' State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, loc. cit. 880." State v. Martin, Mo., 275 S.W.2d 336, 338.

■ The motion for new trial also states that the verdict and sentence constitutes cruel and unusual punishment.

Robbery in the first degree, as defined in Section 560.120 RSMo 1949, V.A.M.S., when accomplished by means of a dangerous and deadly weapon, is punishable, under the provisions of Section 560.135 RSMo 1949, V.A.M.S., by death or imprisonment for not less than five years. Thus it is seen that the verdict and sentence is within the range of punishment fixed by the Legislature. The assignment is without merit.

■ Assignments 8 and 9 merely state that the court erred in the giving and refusal of certain numbered instructions and Assignment 11 merely states that the verdict was against the weight of the evidence. Neither of these assignments states in detail and with particularity the specific grounds or causes upon which error is predicated, as required by S.Ct. Rule 27.20, 42 V.A.M.S. Hence they are not reviewable. State v. Shriver, Mo., 275 S.W.2d 304, 305; State v. Mace, Mo., 295 S.W.2d 99, 103.

The information, in due and approved form, charges defendant with robbery in the first degree by means of a deadly weapon, as defined in the aforesaid Sections 560.120 and 560.135. The record shows due arraignment and the entry of defendant's plea of not guilty. The verdict is responsive to the issues. The record also shows that defendant and his counsel were present at all trial and after-trial proceedings and that prior to sentence defendant was accorded allocution, and that the judgment is in due form.

The judgment is affirmed.

All concur.