**UNITED STATES of America, Appellee,**

v.

**Elton WATTS, Jr., Appellant.**

**No. 75–1978.**

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1976.
Decided April 13, 1976.

**1216**

Thomas M. Bradshaw, Asst. Fed. Public Defender, Kansas City, Mo., for appellant.

Frederick O. Griffin, Asst. U. S. Atty., Kansas City, Mo., for appellee; Frederick O. Griffin and Bert C. Hurn, U. S. Atty., Kansas City, Mo., on brief.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendant, Elton Watts, Jr., appeals from a jury conviction of the charge of uttering and publishing a United States Treasury check in violation of Title 18 U.S.C. § 495.[1] Errors claimed in this appeal charge (1) improper permission of leading questions in connection with the in-court identification of the defendant; (2) improper admission into evidence of mug shots of the defendant; and (3) insufficiency of the evidence to convict. We affirm.

The payee on the Treasury check, Wayne Palmer, testified that as he was walking along returning from the grocery store, a Negro male reached into his left front trousers pocket and took the check in question and ran away. During the course of the trial after Palmer indicated he thought he could identify the man in question, he was asked if he could identify anyone present in the courtroom as being the person who took the check. He initially responded: "I don't see the individual." In a conference with counsel at the bench outside the jury's hearing, the court observed: "He has only looked at the twelve people in the jury box for some reason. * * * I'm going to direct him to * * * stand up. There is a bad vision in that witness stand." The court then directed the witness: "Stand up and see if you see anyone—." The witness requested: "I wonder if I could have a closer look at someone?" The court: "You may." After walking over and taking a close look the witness identified the defendant. The record indicates that witness Palmer was 74 years of age and the distance between the witness chair and the

---

1. The Honorable William R. Collinson, presiding, initially sentenced the defendant to custody and for a report under Title 18 U.S.C. § 5010(e) and upon receipt of the report imposed an indeterminate sentence pursuant to Title 18 U.S.C. § 5010(b), Youth Corrections Act.

defendant was 25 or 30 feet. The defendant was the only Negro male in the courtroom other than one of the jurors. We are satisfied that the trial court did not abuse its discretion in asking the witness to "[s]tand up and see if you see anyone." We also note that the record reveals that the witness testified he had been shown a group of pictures prior to trial and he had selected one of the defendant as being the person who took the check. This was later corroborated by Special Agent Poole of the United States Secret Service.

Joseph Lasala, owner of the store at which the check was cashed, testified he recognized the person cashing the check as having been in his store before. He was unable to positively identify defendant in the courtroom, stating: "Well, sir, he don't look exactly like the picture that I picked out." Lasala testified that about a year prior to trial he had selected a photograph of the person cashing the check from a group of photos shown him by Special Agent Poole.

Thereafter, Special Agent Poole identified a group of twelve photographs that were shown to witnesses Palmer and Lasala (exhibits 2–13 inclusive) and testified that they had individually selected exhibits 2 and 13 as being photos of the person who cashed the check. Poole identified exhibits 2 and 13 as being photos of the defendant.

■ The government offered all of the exhibits in evidence and they were received over defendant's objection that they contained a profile and frontal shot of each individual and were obviously mug shots and would lead the jury to believe that appellant was a police character with a criminal record. An examination of the exhibits reveals that all serial numbers had been removed and the profile and frontal views were separately pasted to exhibit sheets. Every effort was made to disguise the pictorial display. We fail to find any evidence in the record to indicate that there was any attempt to prejudice the defendant. No inquiry was made by the government with respect to any prior involvement by defendant with law enforcement officials. The photographs were relevant to the issue of identity. For example, witness Joe Lasala testified that the defendant didn't look like the photograph he picked out a year before. Finally, it should be noted that the defendant testified he had never been convicted of a felony.

We recognize, as did the trial court, that double-shot pictures, with front and profile shots alongside each other, are so familiar from "wanted" posters in post offices that the inference that the person involved has a criminal record or has been in trouble with the police is natural. *See Barnes v. United States,* 124 U.S.App.D.C. 318, 365 F.2d 509, 510–11 (1966). *See also United States v. Harman,* 349 F.2d 316 (4th Cir.1965). Here we note the care used in disguising the photographic display by removing all serial numbers and separating the frontal and profile shots and pasting them on exhibit sheets minimized possible prejudice. *Compare Barnes, supra; Harman, supra.* The trial court is often faced with the problem of weighing possible prejudice and probative value in admitting evidence. We conclude no abuse of discretion in admitting the photographs has here been shown. Further, defendant's unrefuted testimony that he had no previous convictions removed any possible prejudice that may have been generated by the photo display.

■ Appellant's claim of insufficiency of the evidence to establish that defendant uttered and published the check in question with a forged endorsement thereon requires little further discussion. The payee, Wayne Palmer, described its theft from his person by the defendant and stated that the endorsement thereon was not his; Joe Lasala identified defendant as the one who cashed the check. Defendant's denial of guilt and the evidence offered in connection therewith along with the strength and weakness of the government's proof created submissible issues for the jury's determination. We are satisfied that considering the evidence in a light most favorable to the government there is ample evidence to establish defend-

ant's guilt of the offense charged [2] beyond a reasonable doubt.

Affirmed.

---

**2.** "Uttering and publishing" under Title 18 U.S.C. § 495 is the putting forth or attempt to circulate the false or forged Treasury check. *See United States v. Brown,* 495 F.2d 593, 597 n. 4 (1st Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974); *United States v. Maybury,* 274 F.2d 899, 903–04 (2d Cir.1960); *Rader v. United States,* 288 F.2d 452 (8th Cir.), *cert. denied,* 368 U.S. 851, 82 S.Ct. 86, 7 L.Ed.2d 49 (1961). *See also State v. Jones,* 525 S.W.2d 435 (Mo.App.1975); *Barker v. State of Ohio,* 328 F.2d 582, 585 (6th Cir.1964).