STATE of Missouri,
Plaintiff-Respondent,

v.

Edgar Vernell FUTRELL,
Defendant-Appellant.

No. 39060.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 25, 1978.

Robert A. Hampe, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Richard G. Callahan, St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

Appellant Edgar Vernell Futrell appeals from a judgment entered in the circuit court of the City of St. Louis upon a jury verdict finding him guilty of two counts of robbery in the first degree with a dangerous and deadly weapon. The trial court, after finding appellant had a previous felony conviction, sentenced appellant to two terms of forty-five (45) years imprisonment, said terms to run concurrently. For reversal appellant argues that the trial court erred in permitting the jury to view state's exhibits # 1–9 ("mugshots" of appellant and others). For the reasons discussed below, we disagree and affirm the judgment.

Appellant does not challenge the sufficiency of the evidence. On March 29, 1976,

about 1:00 P.M., two men entered the Wagner Furniture Company. They inquired about dinette sets and followed a salesman, Bert Stein, to the rear of the store. One of the men grabbed Stein and held a shotgun to his back. The other man took out a pistol and, pointing toward the office where the owner, Michael Hearst, and his brother, were working, ordered Michael Hearst to give him the money. Mr. Hearst gave him the money from the office cash register, approximately $400 to $500. The man with the pistol then approached another desk where two other salesmen were working. One of the salesmen, Sidney Wasserman, noticed the man with the pistol and told the other, Gary Barnholtz, who was talking on the phone, to hang up. The man with the pistol searched Barnholtz and took his wallet, which contained about $400.

The man with the pistol then ordered Michael Hearst to get the money from the store safe. The gunmen and store personnel all moved to the store safe. Michael Hearst removed cash, about $4500, and some jewelry from the safe and handed it to the man with the shotgun. The gunmen threatened to kill everyone unless they were given the rest of the money. After Michael Hearst told them they had all the money in the store, the gunmen ordered the store personnel downstairs to the basement and then left.

The police arrived shortly thereafter and took down statements and descriptions of the robbers. The next day, March 30, 1976, the police returned with nine photographs or "mugshots" (state's exhibits # 1–9). The three store employees present that day, Michael Hearst, Richard Hearst and Bert Stein, each identified independently appellant's photograph as that of the man with the pistol. On April 9, 1976, Gary Barnholtz, Sidney Wasserman and Richard Hearst each independently selected appellant out of a lineup as one of the robbers. They also identified another person in the lineup as the other robber, subsequently identified as James Haynes.

On February 14 and 15, 1977, at the hearing on appellant's motion to suppress identi-

fication, all five witnesses testified that just before the hearing they again identified appellant's photograph as that of the man with the pistol. Each witness also testified about the identification of the photograph at the store the day after the robbery or the lineup. The trial court denied the motion to suppress. In addition each witness made an in-court identification of appellant as one of the robbers at the trial. The arresting officer also testified.

Appellant's counsel made an objection to the admission and use of the exhibits at issue before the testimony of the state's first witness. The prosecutor argued that the use of the "mugshots" was proper, particularly because he was not going to pass them to the jury. The trial court overruled appellant's objection, noting that its ruling was "further enforced by the fact that these photographs, according to the State, will not be passed to the jury." The photographs were referred to throughout trial to show prior witness identification and to support the witnesses' in-court identification. The prosecutor offered the photographs into evidence; appellant's objection was again overruled. The prosecutor reoffered the photographs at the end of the state's case and the trial court, subject to the objection of appellant, admitted the photographs and permitted the jury to file past and view the photographs.

Appellant's brother, Kenneth Futrell, provided some alibi testimony for appellant. Kenneth Futrell testified that on the day of the robbery he had asked appellant to watch his niece and nephew so that he could take his car to be repaired. He testified that he left appellant with the two small children at about 11:00 A.M., returning at 2:45 P.M. He also testified that appellant had been wearing slacks and a shirt on the day of the robbery and not a beige leisure suit, as described by the state's witnesses.

■ Appellant's sole point on appeal is that the trial court erred in permitting the jury to view state's exhibits # 1–9, consisting of "mugshots" of appellant and others, because these photographs tended to show that appellant had committed other crimes

and were therefore inflammatory and inherently prejudicial to a fair determination of appellant's guilt or innocence. We note initially that the theory of appellant's argument on appeal is somewhat inconsistent with that of the objection made at trial and in the motion for new trial. On appeal appellant urges that the "mugshots" were inadmissible as evidence of the commission of other crimes. *See, e. g., State v. Diamond*, 532 S.W.2d 873, 876 (Mo.App.1976); *State v. Fox*, 510 S.W.2d 832, 838 (Mo.App. 1974). At trial and in the motion for new trial appellant's objection was to the general prejudicial impact of "mugshots," in that they indicated prior police contact. Normally reliance upon inconsistent theories to support an objection will not preserve the point for review, *e. g., State v. Merritt*, 564 S.W.2d 77 at 78 (Mo.App.1978); *State v. Harper*, 553 S.W.2d 895, 897 (Mo.App.1977). In the present case, however, because we believe the *theory* of the objection made at trial in the motion for new trial and on appeal to be substantially the same, that is, that the "mugshots" are prejudicial because they improperly put before the jury appellant's criminal past, we proceed to a consideration of the merits.

■ Although there is considerable difference of opinion in the federal circuit courts over the introduction of "mugshots" into evidence in criminal trials, see, *e. g., United States v. Harrington*, 490 F.2d 487, 494 (2d Cir. 1973) (development of a rule of analysis); *compare Barnes v. United States*, 124 U.S.App.D.C. 318, 319, 365 F.2d 509, 510 (1966), *with United States v. Watts*, 532

F.2d 1215, 1217 (8th Cir.), *cert. den.*, 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976); see also Annot., 30 A.L.R.3d 908 (1970), our supreme court has established guidelines controlling the admission into evidence of "mugshots." Basically, "mugshots" are admissible if the objectionable parts of the photographs which contain police data are masked and the photographs are relevant to the issue of identity. *See State v. Crossman*, 464 S.W.2d 36, 41 (Mo. 1971); *State v. Childers*, 313 S.W.2d 728, 731 (Mo.1958); *State v. Jones*, 531 S.W.2d 67, 72–73 (Mo.App.1975). For example, in *Crossman*, supra, the defendant, although he did not testify himself, offered alibi evidence and challenged his identification by the state's witness. The trial court admitted the "mugshots". The supreme court upheld the trial court, noting that the objectionable parts of the photographs had been blocked out and "the introduction of the photographs helped the jury to determine the accuracy or inaccuracy of the identification made by the witness." 464 S.W.2d at 41.

■ In the present case the primary issue was identification. The police data was removed from the photographs by blocking out the serial numbers and other information. Although it is true that the prosecution did not "make every effort" to disguise the nature of the photographs,[1] under the rule as stated in *Crossman*, we are unable to find the trial court erred in admitting these "mugshots" into evidence.

1. Appellant cites *United States v. Watts*, 532 F.2d 1215, 1217 (8th Cir.) *cert. den.*, 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976), to support his argument that we should restate the principles of *Crossman* to include a requirement that the photographs be disguised by separating the frontal and profile shots and placing them on exhibit sheets. *See also United States v. Harrington*, 490 F.2d 487, 495 (2d Cir. 1973) (suggesting avoidance of use of juxtaposed full face and profile photographic display and use of photographic duplicates rather than the actual "mugshots" in addition to removal of incriminating indicia). Despite the difference of opinion as to the exact impression "mugshots" make on juries, *compare Barnes v. United States*, 124 U.S.App.D.C. 318, 319, 365

F.2d 509, 510 (1966) *with id.* 124 U.S.App.D.C. 324, 365 F.2d at 515 (Prettyman, J., dissenting), and *United States v. Calarco*, 424 F.2d 657, 661 (2d Cir.) *cert. den.* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 53 (1970), "[w]e recognize . . . that double-shot pictures, with front and profile shots alongside each other, are so familiar from 'wanted' posters in post offices that the inference that the person involved has a criminal record or has been in trouble with the police is natural." *United States v. Watts*, 532 F.2d at 1217. Although we would encourage the prosecution to disguise any "mugshots" exhibited to the jury, we cannot find the failure of the prosecution to rearrange the physical display of the photographs or of the trial court to so require this to be reversible error.

Furthermore, even if we were to find the trial court erred in admitting the "mug-shots" into evidence, in light of the other evidence presented, including multiple line-up and in-court identifications, it was at most harmless error. *Cf. United States v. Rixner*, 548 F.2d 1224, 1226 (5th Cir.), cert. den, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977) (admission of partially cropped mugshots in trial, including one of defendant, in connection with redirect examination of identification witness, was erroneous but constituted only harmless error in view of other strong evidence of defendant's participation and identification by other witnesses).

Accordingly, judgment is affirmed.

CLEMENS, P. J., and SMITH, J., concur.