**UNITED STATES of America, Appellee,**

v.

**John Ray HARBIN, Appellant.**

**No. 78–1253.**

United States Court of Appeals, Eighth Circuit.

Submitted July 14, 1978.

Decided Oct. 19, 1978.

As Modified on Denial of Rehearing and Rehearing En Banc Nov. 3, 1978.

---

James J. Knappenberger, Clayton, Mo., for appellant.

Mitchel F. Stevens, Asst. U. S. Atty., St. Louis, Mo., Robert D. Kingsland, St. Louis, Mo., on brief, for appellee.

Before GIBSON and HENLEY, Circuit Judges, and EISELE, District Judge.*

PER CURIAM.

John Harbin, along with a co-defendant, Danny Pickett, was charged in an indictment in the Eastern District of Missouri with theft from a motor truck of chattels of a value in excess of $100.00, in violation of 18 U.S.C. § 659. The property stolen was furniture and household goods that were moving by way of a United Van Lines truck from Birmingham, Alabama, to Des Moines, Iowa. The truck was stolen from a motel parking lot while in St. Louis County and the property therein was later unloaded and stored at a residence in St. Louis. Harbin was convicted by a jury and sentenced to ten years. In this appeal he asserts four grounds for reversal of the conviction.

## I

■ Appellant argues that the trial court erred in overruling his motion for judgment of acquittal at the close of the Government's case, because the Government failed to present a sufficient case to go to the jury. When such a challenge is made to the sufficiency of the evidence, it must, of course, be viewed in the light most favorable to the Government. *See, e. g., Durns v. United States,* 562 F.2d 542, 545–46 (8th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977).

The evidence in the Government's case showed that one Gerald Hess of Birmingham, Alabama, moved his furniture by a United Van Lines truck in January, 1978, from Birmingham to Des Moines, Iowa. The driver of the truck stopped in St. Louis on the night of January 10 at about 11:30 p. m., leaving the truck on the motel parking lot. He awoke the next morning about noon and discovered that the truck was gone.

Gerald Meek, of 1923 South Ninth Street, St. Louis, was awakened in the early morning of January 11, 1978, by Danny Pickett and appellant. He saw the truck parked in his backyard. Meek was told that some things would be unloaded and carried into his house. He then proceeded to help Pickett and appellant unload items from the truck. Appellant drove the truck away about 8:00 a. m., returning around 8:30 a. m. in a car to pick up Pickett. Meek again saw appellant that evening when appellant came by looking at the items and looking for Pickett. Pickett also came to Meek's home that evening to inspect the items.

Shirley Ferman, who lives behind Meek, was another eye-witness. She worked late on the night of January 10, returning home around 7:00 a. m. on the morning of January 11 to see appellant and others unloading a truck, which was about 10 feet away from her kitchen window. After she watched for

---

* G. THOMAS EISELE, District Judge, Eastern District of Arkansas, sitting by designation.

15–20 minutes, she saw appellant drive away in the truck.

Appellant contends that, from this evidence, it is equally plausible that he was an innocent assistant or that he merely possessed or received the goods rather than stole them. While it is true that mere association or mere presence with others is not enough to support a conviction, the jury certainly would be permitted on the basis of the evidence in this case to find beyond a reasonable doubt that appellant stole the goods from the truck, as two eye-witnesses testified. Appellant then contends that the only "theft" in this situation was of the truck with the goods inside, a theft completed when the truck was stolen from the motel parking lot. However, even if a "theft" of the goods did occur at the time the truck was taken from the parking lot, the evidence of appellant's possession and unloading of the truck in close proximity in time and place to its disappearance would permit the inference of defendant's participation in the theft of the truck itself. *See United States v. Jacobson,* 536 F.2d 793 (8th Cir.), *cert. denied,* 429 U.S. 864, 97 S.Ct. 171, 50 L.Ed.2d 144 (1976). The indictment and the evidence, therefore, are broad enough to cover (1) the theft of the truck and its contents from the motel parking lot *and* (2) the theft of the contents of the truck while it was parked behind Meek's residence. Defendant did not request jury instructions which would have clarified the matter. Whether this was inadvertent or a matter of trial strategy is not important. It is too late on appeal to complain of such a matter. Clearly the challenge to the sufficiency of the evidence did not raise the question.

## II

Appellant contends that the trial court committed prejudicial error in overruling his motion to inspect grand jury minutes and to produce investigative reports. Appellant in his motion before the trial court stated no particularized need for the production of the grand jury minutes. He makes only a general plea that an inspection of the minutes might yield a ground upon which to move to dismiss the indictment. The trial court therefore did not err in refusing to breach the secrecy of the grand jury. *United States v. Knight,* 547 F.2d 75 (8th Cir. 1976); *see generally, In Matter of Disclosure of Testimony Before Grand Jury,* 580 F.2d 281 (8th Cir. 1978). Appellant's contention on appeal that the particularized need prior to trial was (though not stated at the time) the impeachment of witnesses is not an adequate basis upon which to disclose grand jury minutes. *Hanger v. United States,* 398 F.2d 91, 97 (8th Cir. 1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969).

Appellant also moved for the production of "investigative reports" of the FBI and the St. Louis Police Department on the expectation that they contained exculpatory material and were essential to the preparation of a proper defense. The government's response to this motion was that no exculpatory material existed. The trial court did not abuse its discretion in denying this motion. The Government did give to appellant prior to the trial the relevant Jencks Act material, and no exculpatory material contained therein is specifically cited by appellant. Insofar as the motion to produce investigative reports was an effort to obtain a list of government witnesses and their statements, the trial court did not abuse its discretion in denying such access. *United States v. Harflinger,* 436 F.2d 928, 936 (8th Cir. 1970), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971).

## III

Appellant next contends that the trial court committed prejudicial error in admitting into evidence a picture of appellant at the time of his arrest and in admitting into evidence a "photo spread" used by a witness to identify appellant, because the prejudicial impact of these pictures outweighed their probative value.

The record shows that on the cross-examination of Gerald Meek, a Government wit-

ness, defense counsel questioned Meek's in-court identification of the appellant by attempting to establish that the individual seen unloading the truck had a physical appearance different from that of the appellant. Testimony established that the appellant in fact was wearing his hair considerably shorter at the time of trial than at the time of arrest, and therefore the Government produced the FBI case agent, who testified that appellant's hair as seen at trial was shorter than at the time of his arrest. The agent confirmed this fact by identifying a photograph of appellant, admitted into evidence, made by the FBI at the time of arrest. This photograph, identified as that of the defendant at the time of the arrest for the charge on which he is being tried, was used to rehabilitate a witness' identification of the defendant. It does not exhibit the prejudicial effect of a "mug-shot," which might be taken by the jury as indicative of a prior criminal record. The trial court was within its sound discretion in admitting the photograph here. *See Giblin v. United States*, 523 F.2d 42, 44 (8th Cir. 1975), *cert. denied*, 424 U.S. 971, 96 S.Ct. 1470, 47 L.Ed.2d 739 (1976).

■ Appellant also contends that the trial court erred in allowing into evidence a "photo spread" from which Government witness Meek had identified appellant prior to the trial. The record shows that defense counsel, in attempting to weaken the credibility of Meek's identification of appellant, as described above, asked Meek if he had been shown a photo spread, to which the answer was yes. The Government then had FBI agent Campbell identify the actual photo spread used by Meek, along with the particular photo picked out by Meek.

The prejudicial impact of this photo spread, if any, was outweighed by its probative value, and the trial court did not abuse its discretion, under the stated circumstances, in admitting it into evidence. The photographs did not impermissibly put appellant's character into question by suggesting a prior arrest record, for the record shows that markings on the photos were covered, and only frontal photos were used by past-

ing them to an exhibit sheet. The photo spread was otherwise unquestionably relevant to the identity issue raised by defense counsel. *See United States v. Watts*, 532 F.2d 1215 (8th Cir. 1976), *cert. denied*, 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1977).

## IV

■ Appellant next argues, in a similar vein, that the trial court committed prejudicial error in failing to declare a mistrial when the FBI case agent improperly put the appellant's character in issue by testifying, when viewing the aforementioned picture, that appellant had "hair that extends below his ears, very shabby in appearance." (Tr. at 82).

The specific comment made by the agent was in response to a question posed by the prosecutor:

Q. Would you please describe for us the difference in the hairstyle of Mr. Harbin in that photograph and as he now appears in this courtroom?

A. In this photograph Mr. Harbin has hair that extends below his ears, very shabby in appearance.

Upon defense counsel's objection, the trial court instructed the jury to disregard the witness' comment. It is plain that this comment was not patently inculpatory, or so denigrating as to create any likelihood of prejudice, *see United States v. Splain*, 545 F.2d 1131, 1133–34 (8th Cir. 1976). Furthermore, the photograph which was described by the FBI agent was in evidence so the jury could make its own assessment of that description. Finally, any possible prejudice was cured by the court's immediate cautionary instruction to the jury.

Affirmed.