THE STATE v. PATRICK CLANCY, Appellant.

Division Two, February 12, 1910.

1. ASSAULT WITH INTENT TO KILL: Deadly Weapon: Bottle. The bottle with which defendant struck the prosecuting witness was described simply as a "Bevo" bottle, but, though it was introduced in evidence, its dimensions were not given, nor was it shown whether it was heavy or light, full or empty. *Held*, there was no evidence upon which the court could instruct the jury upon the theory of a felonious assault, with a deadly weapon, to-wit, a heavy glass bottle.

2. REMARKS OF ATTORNEY: Unwarranted. Remarks by the circuit attorney that defendant was a "police character" and "was under the surveillance and the suspicion of the police," when there was no evidence to justify such a characterization, were unwarranted; and the court's failure, upon objection, to rebuke the attorney and to direct the jury to disregard them, was error; and a statement by the court, that "I will sustain the objection, and correct the circuit attorney," was no correction at all.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen*, Judge.

REVERSED AND REMANDED.

*C. Orrick Bishop* for appellant.

(1) The fourth paragraph of the first instruction assumes that the weapon used was a heavy glass bottle. There is nothing in the record to show what sort of

bottle was used in the alleged assault, 'it being described only as a "Bevo" bottle, and identified as the bottle which appellant had in his hand when he was arrested. There is nothing from which it may be determined whether it was heavy or light; although there is evidence that when the prosecutor was struck with it there was a "terrible flow of blood," and that he had had a "sort of a headache" all the time since. There was no medical evidence as to the nature of the wound, or injury, although the prosecutor claimed to have received medical treatment. The language used, in connection with the declaration as to the presumption of intent, was calculated to impress the minds of the jurors that, in the opinion of the court, the weapon used was a heavy glass bottle. (2) The court erred in permitting the circuit attorney, in his closing argument, over appellant's timely objections, to indulge in improper argument and to abuse the appellant.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) Upon a careful consideration and perusal of all the instructions given in the case, they are found to properly declare the law applicable to the facts of this case, and substantially conform to approved precedents of this court. State v. Tetrick, 199 Mo. 104; State v. Miller, 93 Mo. 263. (2) Taking all the arguments, objections and rebukes by the court to the circuit attorney, the defendant was not and could not have been prejudiced. The judgment should not be reversed by reason of improper arguments of counsel unless the defendant is prejudiced thereby. The argument was proper. State v. Sublett, 191 Mo. 174; State v. Harvey, 214 Mo. 403; State v. McMullin, 170 Mo. 632.

BURGESS, J.—On November 30, 1908, in the circuit court of the city of St. Louis, defendant was convicted of the crime of assault with intent to kill, with

malice aforethought, under an indictment charging him with said offense, and his punishment assessed by the jury at five years in the penitentiary. Motions for new trial and in arrest of judgment were filed by defendant, and the same being overruled by the court, defendant appealed.

The evidence developed the following state of facts:

Harry V. English, the victim of the assault, was a dealer in cigars and tobacco, at 2028 Olive street, in the city of St. Louis. At about eight o'clock in the evening of the 12th day of October, 1908, he was in his store, standing in front of a cigar case, reading a newspaper, his back being towards the door, when defendant came in and struck him on the back of the head. Turning around, he recognized and grappled with the defendant, and a scuffle ensued, during which the cigar case was broken. Defendant was followed into the store by another man, who said, "Wait a minute, and I'll get him." This party took a stool which was in front of the counter, and endeavored to strike English with it, but the latter clung close to the defendant and held him in such a way that his new assailant could not strike him at that time. During the struggle the defendant seized what was called a "Bevo" bottle, which was on the counter, and struck English therewith on the head. He fell down between two cigar cases, and his two assailants struck him several times while down, but he managed to protect himself to some extent by using his feet. While on the floor, English drew a revolver out of his pocket, whereupon the defendant and the other man ran out of the store, the defendant going without his hat, but taking the bottle with him. English got up and went to the door, and seeing the defendant running across the street he fired three times at him, two of the shots taking effect, one in the left arm and the other in the left leg. Defendant was pursued by a police officer

and arrested.  At the time of his arrest he was hatless and still had the "Bevo" bottle in his hand.  He was taken back to English's store, where two hats were found lying on the counter, one of which defendant claimed as his and put it on.  The bottle in question was offered in evidence, and identified by said police officer as the one he saw in defendant's possession when he arrested him.  It was also identified by English as the one with which he was struck.

English testified that there was a great flow of blood from the wound in his head inflicted by the defendant; that his wife washed off the blood, and that he was then taken to the city dispensary, where his wounds were dressed; that since the time of the assault he had a "sort of headache" all the time.

The evidence shows that on October 7, 1908, the defendant was convicted of the crime of false registration in the city of St. Louis, and that English and one Max Klein were witnesses against him at the trial which resulted in his said conviction, and it also appears that one Thavenau was convicted of a like offense at or about the same time.  The said Klein was a witness for the State in this case.  He testified that he was in the saloon business at 2100 Olive street; that on the evening of the assault defendant and the said Thavenau came into his saloon; that defendant took a glass of beer, and asked him (Klein) to take a drink with him, which he declined to do, but took a cigar instead.  After remaining a few minutes longer, defendant and his companion left the saloon.  About fifteen minutes after their departure witness heard several pistol shots.  English's store and Klein's saloon were but a short distance apart.  At the time defendant and Thavenau were in the saloon, Klein was in the company of and drinking with some of his friends.

Defendant, testifying in his own behalf, stated that on the day in question he was working for the

city, in the water department; that in the evening he met Thavenau at Twenty-first and Olive streets, and they went into Klein's saloon to have a drink; that after leaving the saloon he and Thavenau parted, the latter going west and he going east on Olive street; that he had heard of a rumor to the effect that somebody told English that he (defendant) was going to do something to him, and as he was passing by English's store, he thought he would go in and see him about it; that English stopped him as he was going in, and "the fuss started right there;" that other parties whom he did not know followed him into the store and took part in the fight; that he got away from English as soon as he could, and as he was leaving he seized a bottle to protect himself with; that as he was running away he was shot by English in the arm and leg. He denied striking English with the bottle, but stated that he struck him with his fist. On cross-examination, he acknowledged that on the 7th of October, 1908, he had been tried in the circuit court on a charge of fraudulent registration, and had been convicted, his punishment being fixed at five years in the penitentiary.

The indictment charges that "the said Patrick Clancy, with a certain deadly weapon, to-wit, a heavy glass bottle, likely to produce death or great bodily harm, then and there feloniously, wilfully, on purpose and of his malice aforethought, did assault, beat, bruise and wound the said Harry V. English, then and there giving to the said Harry V. English, in and upon the head and body of him, the said Harry V. English, with the deadly weapon, to-wit, the heavy glass bottle aforesaid, one wound, with the intent then and there him, the said Harry V. English, feloniously, wilfully, on purpose and of his malice aforethought, to kill," etc. The court instructed the jury upon the theory of a felonious assault, with a deadly weapon, to-wit, a heavy glass bottle, without any evidence whatever

that the bottle in question, which was introduced in evidence, was a deadly weapon. It was simply described as a "Bevo" bottle, whatever that means. Its dimensions were not given, nor was it shown whether it was heavy or light, full or empty. It was for the jury to determine, under proper instructions, whether said bottle was a deadly weapon, and without such finding they could not find the defendant guilty. There being no evidence from which it could be inferred that the bottle was a deadly weapon, it was improper to give said instruction. For this reason the judgment will have to be reversed, and a new trial ordered.

The circuit attorney, in his closing argument for the State, more than once gave utterance to remarks of a character prejudicial to the defendant, and which were not warranted by the evidence. Among other such remarks, were the following:

"Counsel for defendant says if he [defendant] went in there to do him great bodily harm, why didn't he have a weapon? I will tell you why. People of that character don't carry weapons very often. Police characters don't carry weapons very often." On objection of defendant's counsel that there was no evidence that defendant was a "police character," the court said, "I don't know whether I know what a police character is. He seems to have been on the police force; he may have had a police character." Exception was saved to this language of the court, and the court then said, "I don't know if it is objectionable—I will sustain the objection—I don't know whether the jury understand it or not." The circuit attorney then, in explanation of the term "police character," said: "I mean a man who was under the surveillance and under the suspicion of the police; a man that was liable to be picked up by the police, or arrested by the police." The court then said: "With that explanation given by the circuit attorney, I will

sustain that, and correct the circuit attorney." This was no correction at all, and the court might as well have said to the circuit attorney that he should not have made such statement. There was no testimony whatever to the effect that defendant was a "police character." Indeed, the police officer who arrested the defendant testified that he had never known nor seen the defendant prior to the time of his arrest. Such remarks by the circuit attorney must have been very damaging to the defendant, and were beyond the pale of legitimate argument. Upon objection made by the defendant, the court should have promptly rebuked counsel for the State for his unwarranted remarks, and directed the jury to disregard them. Failure to do so was error. [State v. Young, 99 Mo. 666; State v. Ulrich, 110 Mo. 350; State v. Fischer, 124 Mo. 460; State v. Bobbst, 131 Mo. 328.]

For the reasons given, the judment is reversed and the cause remanded for new trial. All concur.