STATE of Missouri, Respondent,

v.

Fred Phillip INGRAM, Appellant.

No. 45051.

Supreme Court of Missouri.

Division No. 1.

Feb. 13, 1956.

Robert J. O'Hanlon, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Paul McGhee, Asst. Atty. Gen., for respondent.

WESTHUES, Judge.

Appellant Ingram, Donald Dean Knollhoff, Clyde Casey, and Ronald Berry were jointly charged by an indictment with robbery in the first degree by means of a dangerous and deadly weapon. Ingram was tried separately and a jury found him guilty, assessing his punishment at imprisonment in the State Penitentiary for a term of six years. From the sentence imposed, he appealed to this court.

The alleged offense occurred on April 29, 1954, in the City of St. Louis, Missouri. On the evening of that day, two men entered the Marlen Drug Store at 3157 Park Avenue and, at the point of a pistol, forced the clerk in charge to open the cash register from which about $207 was taken. At the trial, the defendant and one William Durbin were identified as the perpetrators of the robbery. Two clerks and a customer in the store at the time testified that the defendant was one of the men. Durbin testified for the State and implicated the defendant Ingram, Knollhoff, Casey, and Berry as participants in the crime. Durbin testified that he and Ingram entered the store while the others were either keeping a lookout or were waiting near the store in a car in which all were to make their getaway after the robbery. Durbin further testified that a car accident occurred near the store about the time of the robbery which caused police officers to come to the scene. The presence of the officers caused the alleged participants in the robbery not in the store to flee. Durbin stated that after the robbery all finally met at his house where the loot was divided.

Ingram was represented at the trial by Robert J. O'Hanlon, a Public Defender. Defendant did not testify. The only witness called for the defendant was a police officer whose evidence will be stated in substance later in this opinion in connection with an assignment of error in the motion for new trial. A motion for new trial was filed but the case was not briefed in this court. We must, therefore, look to the motion for assignments of error. In said motion there are twenty-one assignments of error covering eleven pages of the transcript. There are many duplications; some of the assignments do not present any question for review; others are not supported by the record. We shall, therefore, review such assignments which preserve a question for review and ignore those that do not.

We need not consider at length defendant's contention that the trial court err-

ed in not sustaining a motion to dismiss at the close of the case. The evidence as shown by our statement was ample to sustain a conviction.

 Seven separate assignments of error were devoted to rulings made by the trial court during the examination of witness Durbin who was a self-confessed participant in the robbery. He was not charged jointly with his accomplices. He testified for the State. In such a situation, a trial court should, in justice to the defendant on trial, permit a full cross-examination of the witness. In this case, Durbin was asked if he had not on some other occasion testified for the State in a case wherein he had been an accomplice. He was also asked if he had not at the time he was arrested, and thereafter, confessed to a number of specific crimes; also, if he had not been convicted of crime. The record shows that the cross-examination of this witness covered about thirty-three pages of the record. That should have been sufficient to cover all matters material to the issues in the case. However, the record shows that the prosecutor in the case objected to most of the questions asked and that the trial court lacked firmness in ruling which resulted in lengthy argument by counsel on both sides. The trial court did permit witness Durbin to state the number of times he had been convicted of criminal offenses; but the court sustained objections to questions on cross-examination as to the number of "hold ups" to which the witness had confessed. The court also sustained the State's objection to a question asked Durbin as to whether he had been an informer and had testified for the State in another case wherein Durbin had been a participant in the crime. The purpose of the cross-examination of Durbin, an accomplice, as indicated by the questions asked, was to reflect adversely on his credibility as a witness. A trial court, while possessed of some discretion in limiting such a cross-examination, should nevertheless give a defendant a reasonable opportunity to show motive a witness may have in testifying. 22 C.J.S., Criminal Law, § 814, p. 1419;

70 C.J. § 832(b), pages 679, 680. We need not determine in this case whether there there was an abuse of discretion for the reason that the case must be reversed and remanded on other grounds which we shall now consider.

Defendant's only witness was Virgil Kleine, a police officer. He testified that the State's witnesses, that is, the employees present in the drugstore when the robbery was committed, failed to identify the defendant in the "show up" room at the police headquarters. On cross-examination by the prosecutor, it was shown by the officer's evidence that the defendant had been arrested in connection with a shooting affray. The defendant objected to this evidence on the ground that this evidence was immaterial and prejudicial to the rights of the defendant. The trial court ruled that the evidence was proper for the purpose of identification. As we view the record, the purpose of showing that defendant was arrested on some other charge was to bring to the attention of the jury that defendant had been connected with oher offenses. Note some of the questions asked this witness by the prosecutor:

"Q. (By Mr. Bruntrager) Officer when you originally took the defendant —Did you arrest the defendant? A. No, sir. He was arrested at our request.

"Q. At your request? A. Yes, sir.

"Q. Was it for the Marlen pharmacy? A. No, sir.

"Q. The arrest wasn't for the Marlen pharmacy? A. No, sir.

"Q. But he was taken into custody and arrested on some charge? A. Yes, sir.

"Mr. O'Hanlon: I am objecting to this. It assumes something not in evidence.

"The Court: The officer has stated they arrested him. The jury has a right to know who arrested him.

"Mr. O'Hanlon: He wasn't arrested by this particular police officer. Therefore it would be based on hearsay.

"The Court: I will overrule the objection.

"Q. (By Mr. Bruntrager) He was arrested on some charge at your request on some charge other than the Marlen Drug? A. Yes, sir.

"Q. Did you wait at the Third District for them to bring him in or what happened?

"Mr. O'Hanlon: I would like to ask for a mistrial. I think it is going out of the scope of the evidence in the case, and it is highly prejudicial to defendant and for that reason I will move for a mistrial.

"The Court: I will overrule the objection.

* * * * * *

"Q. (By Mr. Bruntrager) How many men did you have in custody? A. Three or four.

"Q. Do you recall who they were? A. Knollhoff was one. He wasn't in custody in the third district.

"Q. Where was he in custody?

"Mr. O'Hanlon: I am going to object. That is not binding on the defendant, where Knollhoff was.

"The Court: It is alleged that Knollhoff was one of the participants in the robbery?

"Mr. Bruntrager: That is right.

"Q. (By Mr. Bruntrager) Where was Knollhoff in custody? A. At City Hospital.

"Q. What developed in the course of your investigation to have the witnesses brought down on the Marlen Drug Company? Tell the jury the circumstances of that please. A. There was a shooting, a youth—

"Mr. O'Hanlon: I am going to object to this and ask that a mistrial be declared.

"The Court: The motion will be overruled.

"A. There was a shooting occurred of Knollhoff somewhere in the vicinity of Fourteenth and Chouteau. My partner and I, Officer Bell, made the initial investigation during which we learned there were several youths in company with Knollhoff at the time of the shooting.

"Mr. O'Hanlon: I am going to object to this. It is based on hearsay. He has no firsthand knowledge of what took place between Knollhoff and someone else.

"The Court: I will overrule the objection.

"Q. (By Mr. Bruntrager) Who were these other youths, Officer? A. I don't recall their names right now, sir.

"Q. You made an investigation, yourself? A. Yes, sir.

"Q. Then you went to the Third District and you had the defendant arrested and another watch brought him to Third District and he was questioned about the shooting, is that right? A. That is right, yes, sir."

There was no evidence in the record that the shooting of Knollhoff had any connection with the robbery. Much of the evidence concerning defendant's connection with this alleged shooting as testified to by the police officer was hearsay. The only effect of this evidence was to get before the jury the fact, if it were a fact, that the defendant was involved in some other violation of the law. The admission of this evidence was prejudicial to the rights of this defendant.

 The general rule is that on a prosecution for a crime evidence of other offenses is not admissible. *22 C.J.S., Crimi-*

nal Law, § 682, p. 1084; State v. Leonard, Mo., 182 S.W.2d 548, loc. cit. 551(6–8). There are exceptions to this rule of which one is that if the evidence of another crime tends to establish the identity of the defendant, the evidence may be admitted for that purpose. 22 C.J.S., Criminal Law, § 684, p. 1097; State v. Hawley, Mo., 51 S.W.2d 77, loc. cit. 78(4, 5).

In this case, the trial court ruled that the police officer's evidence concerning the arrest of the defendant in connection with some other crime tended to prove his identity. The record, however, does not support this theory. We rule that the evidence should not have been admitted.

The judgment is hereby reversed and the case remanded.

All concur.