STATE of Missouri, Plaintiff-Respondent,

v.

Pat HARRIS, Defendant-Appellant.

No. 36099.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Jan. 20, 1976.

Motion for Rehearing or Transfer
Denied Feb. 26, 1976.

Application to Transfer Denied
April 14, 1976.

Denis C. Burns, James E. Godfrey, Inc., St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Robert M. Sommers, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Thomas J. Kavanaugh, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Judge.

Defendant was charged with and convicted of first-degree robbery by means of a dangerous and deadly weapon. The court sentenced him to 35 years' imprisonment.

Defendant's allegations of error focus upon photographs used for purposes of identification. He contends that comments of the prosecution in opening statement, the answers to questions propounded to witnesses, and an offer by the prosecution to display one of the photographs to the jury, erroneously injected evidence of a prior crime into the case.

Defendant does not question the sufficiency of the evidence to warrant a conviction. At about noon, Donald Bledsoe, who was home on leave from the Marine Corps, was returning to his home from the store. He had turned into an alley when he was approached by defendant and two other men. One of them asked for a cigarette. When Bledsoe removed a cigarette from his pocket his wallet fell to the ground. As he reached for the wallet one of the men put a gun to his head and the defendant grabbed the wallet. The three men then ordered Bledsoe into the basement of a vacant house, struck him and forced him to strip to his underwear. They discussed among themselves which one would kill him. They finally returned the wallet after removing

the cash and told Bledsoe to leave. Bledsoe then ran up the alley to his home and called the police. Mr. Bledsoe identified a photograph of defendant as one of his assailants. He also identified defendant in a line-up. At the trial the victim made a positive in-court identification and also identified defendant from a photograph of the line-up. It was also developed on cross-examination of the victim that he had seen the defendant in the neighborhood some 3 or 4 months before the robbery.

Defendant did not testify but offered two alibi witnesses. The manager of the apartment where he lived testified that defendant was washing clothes on that day. Defendant's wife said that she noticed freshly washed clothes when she returned home from work that evening.

The facts giving rise to the issues raised will be set out where indicated.

The defendant specifically contends that the court erred in not granting the defendant's motions for mistrial when the court admitted "evidence of prior crimes of the defendant" in the following respects:

"A) . . . the Circuit Attorney's statement in the course of his opening statement that two detectives took 'so-called mug shots of people on file with that division' to the victim, from which the victim identified the photograph of the defendant, after which the detectives returned to the office where 'they found out where this man was.'"

"B) . . . the statement of the victim, Donald Bledsoe, on direct examination that 'they came about twice, to show me mug shots.'"

"C) . . . the statement of Detective Donnell Whitfield on direct examination that he took 'photographs of subjects on file in our department' to the home of the victim."

"D) . . . the request by the Circuit Attorney made at the close of his case in chief, within the hearing of the jury, whereby he requested permission to pass to the jury 'State's Exhibit No. 2, a photograph, a smaller photograph, which is (sic) likewise, been admitted into evidence.'"

We confine our discussion to those incidents specifically designated in defendant's brief.[1]

The prosecutor in his opening statement told the jury that the proof would be that detectives of the "Burglary and Robbery Division" would tell them that "they brought out several photographs of so called mug shots of people on file with that division, with the Burglary and Robbery Division," to the victim. No objection was made to the remarks of the prosecutor when made. He continued his statement for another eleven lines in the transcript. At that time defense counsel approached the bench and informed the court that the State had "introduced evidence, information about defendant . . . in the police files. It is an indication of another offense . . ." His only request was for a mistrial.

As in the case of improper argument, objections to statements of the prosecutor must "be made at the time the objectionable statement is made or nothing is preserved for review." *State v. Turley,* 518 S.W.2d 207, 211[3] (Mo.App.1974). This incident is not properly before us.

The second occasion was a purely voluntary response by the victim on direct examination as follows:

"Q. Okay, now. How many days after you were robbed, did the detective come out to your house?

A. They came that next day. They came about twice, to show me mug shots. Then the next day, they picked me up."

The term "mug shot" was not used. No objection was made at trial, in the motion for new trial, or in the briefs of the parties with respect to these matters.

---

1. At argument on re-hearing mention was made of an indirect reference to the photograph and a comment made in final argument with respect to the "smaller picture".

The defendant asked for a mistrial on the ground that the Circuit Attorney's question was so framed as to call for "the answer mug shot".[2] The court refused to declare a mistrial. The court, however, interposed and sustained its own objection to the term "mug shot".[3] In the Motion for New Trial defendant alleged that the question was erroneous. He now complains of the answer, not the question. He contends that the court erred in not declaring a mistrial when the victim said, "They came about twice to show me mug shots." An appellant may not, on appeal, change or broaden the scope of the assignment of error in his motion for new trial. The present contention was not preserved in the Motion for New Trial, and is not now reviewable. *State v. Larkins*, 518 S.W.2d 131, 135[6] (Mo.App.1974); *State v. Kinder*, 496 S.W.2d 335, 339 (Mo.App.1973).

If these incidents were properly before us we would find no prejudicial error. Much interest was evidenced in the substance of these issues, by our brethren who would dissent, and for that reason we shall discuss them along with others properly raised.

The defendant's principal contentions center around the term "mug shot".[4] Defendant, as noted above, also complains of the incident when Detective Whitfield testified that he went to see the victim and brought "Photographs of subjects *on file in our department*." (emphasis added)

Preliminary to discussion of the issues it is appropriate to restate an old principle. On appeal we should indulge the presumption that the trial court ruled properly. The burden of showing erroneous action on the part of the court is upon the appellant. ". . . error must be affirmatively shown, or appear by necessary implication. Conjectures and inferences will not subserve such a purpose." *State v. Taylor*, 134 Mo. 109, 35 S.W. 92, 98 (1896).

That evidence of a defendant's prior crimes is generally inadmissible, is axiomatic. The jury heard no direct evidence that defendant had previously committed a crime. The primary issue here is whether the use of the term "mug shots" on the two occasions mentioned and one reference to photographs on file with the police department, within the context of this case, necessarily referred to prior criminal activity on the part of the defendant and was prejudicially erroneous.

The burden was upon defendant to show that the use of the term "mug shots" and the phrase "pictures on file with our department" [the police department] constituted "evidence of prior crimes". To reach this conclusion he would have two alternative avenues open to him.

First he would have the burden of proving that all mug shots or photographs on file with the police department are photographs of persons who had committed prior crimes. This he has not attempted to do

2. "The Court erred by its refusal to grant the defendant's request for a mistrial following the question asked Donald Bledsoe by the Assistant Circuit Attorney on direct examination, pertaining to whether or not the police took a 'mug shot' of the defendant to Bledsoe's house. This question was clearly inadmissible as evidence of a prior offense and past police history, was highly prejudicial, was clearly irrelevant, immaterial and incompetent, and was offered solely for the purpose of inflaming the passions and emotions of the jury."

3. "Mr. Burns: Judge, the Circuit Attorney has asked questions calling for the answer, mug shot. He specifically referred to mug shot again. He is referring to another crime. As to prevent an unbiased trial, I request a mistrial.

The Court: He is objecting to the word mug.

Mr. Burns: I am objecting.

The Court: I will sustain it, as to the word, mug shot. Use pictures; and your request for a mistrial is denied."

4. "Mug shot . . . (6) *Slang.* to take a photograph of (a person) esp. in compliance with an official or legal requirement." The American College Dictionary (C. L. Barnhard, Ed.1970).

"Mug shot. A photograph of a person's face—usu. used of official police photographs." Webster's Unabridged Dictionary, Third Edition.

and it was not incumbent upon the State to prove the contrary.[5]

Alternatively the defendant would have to prove that the average juror erroneously believes that persons whose photographs are on file with the police department have committed other crimes. We cannot infer that the jury inferred that defendant had committed prior crimes because the police department has a photograph of defendant. The defendant has failed to carry the burden of showing that the court erred. See *State v. Carson*, 501 S.W.2d 503, 506 (Mo. App.1973).

This is not to say that in another case the defendant may not be able to prove that the term "mug shot" connotes prior criminal activity to the average juror.

It is noted that the term "mug shot" was first used by defendant. In the hearing on the Motion to Suppress, immediately before the trial, counsel for defendant, in referring to a picture of defendant, asked of a detective, "Was that a mug shot?" Subsequently Mr. Bledsoe was asked if he talked to the detective. In reply Mr. Bledsoe said, "They brought mug shots." If defendant had not encouraged or condoned the use of the term, he at least could reasonably have anticipated its use in the trial before the jury. If he felt that the use of the term was objectionable, preventative action could have been taken.

After the defendant objected to the State's reference to "mug shots" in the opening statement the term was not used again by the prosecutor. The question he asked of the victim was not a leading question and was not so framed as to elicit any reference to mug shots.[6] When Detective Whitfield testified that he showed the victim pictures on "file with our department" he merely referred to photographs in the

files of the St. Louis Police Department. He did not make reference to the files of the Burglary and Robbery Division. There was no inference of prior crimes in this reference.

On the three occasions of which defendant now complains he sought only a mistrial. The court offered to take corrective action by instructing the jury with respect to the term "mug shot". This offer was refused by the defendant.

■ As has been well said recently by this court, "The declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court who observed the incident giving rise to the request. The trial court weighs the prejudicial effect and determines, in the exercise of a sound discretion, whether to grant or deny the request. An appellate court will not reverse on such a ground unless it finds this discretion was abused." *State v. Franklin*, 526 S.W.2d 86, 90[8, 9] (Mo.App.1975).

*State v. Rutledge*, 524 S.W.2d 449 (Mo. App.1975) presented practically the same issue. In the first half of the State's closing argument the prosecutor referred to photographs shown to the witness as "mug shots". No objection was made and the statement stood unretracted. In the closing half of the argument the prosecutor on two occasions made use of the term "mug shots". Objections were sustained and the jury was ordered to disregard the statement. The court did not instruct the jury as to the term. The request for mistrial was denied. This court held that it was "not convinced that a reference to 'mug shots' indicates the commission of separate crimes." We can say here along with *Rutledge* that "the context in which the term was used was in the identification from

---

**5.** If called upon the State could have shown that all cab drivers in St. Louis are required to file their photographs with the police department; that the department has on file photographs of all licensed watchmen, all reserve officers, all police officers, all civil-
ian employees of the department, all police commissioners and all applicants for positions with the police department.

**6.** "Okay, now. How many days after you were robbed, did the detective come out to your house?"

photographs and not that the defendant had committed other offenses."

Other jurisdictions have also faced the same problem. In *U. S. v. Robinson,* 406 F.2d 64 (7th Cir. 1969), the prosecutor in opening statement said that the witnesses went to the police station where they "looked at what the Police Department calls mug shots [and] picked out [defendant's] picture . . . ." The court denied the motion for mistrial and took corrective action in the nature of that offered by the trial court in this case. Thereafter, during the trial, witnesses, on numerous occasions, referred to having looked at "a mug file", "picture file", "photographs of suspects" or "photographs" at the police station. The court pointed out that there was no direct mention of prior criminal activities and said l. c. 66:

> "The 'mug shots' in the case at bar were identified as being at the police station, not at a penal institution, . . ."

> ". . . mere reference to 'mug shots' unaccompanied by anything suggesting past criminal activities, and where the trial judge gave a comprehensive instruction to the jury cautioning them not to draw any inference of criminality from the term 'mug shots' [was not erroneous]."

In *Valley v. People,* 165 Colo. 555, 441 P.2d 14 (banc 1968) it was held that the court did not abuse its discretion in not declaring a mistrial when an investigator volunteered on direct examination that he had "presented a number of 'mug shots which are pictures taken in the . . . jail when a person is booked into jail.'"

*State v. Clancy,* 225 Mo. 654, 125 S.W. 458 (1910) is cited as closely akin to this case. In that case the prosecutor not only referred to the defendant as a "police charac-

ter" but he explained what he meant by the term.[7] The Supreme Court reversed because the trial court did not take corrective action.[8] In the present case no direct reference was made to defendant's character or criminal activity and defendant refused to permit the court to take corrective action. In all the other cases cited by defendant direct references were made to other specific crimes or criminal activity.

The specific references to the term "mug shots" in this case were not preserved for our appellate review. If they had been preserved the trial court cannot be said to have abused its discretion in failing to declare a mistrial.

 Another incident of which defendant complains concerns a photograph of defendant which was marked Exhibit 2 and accepted into evidence, but which the court would not permit the State to show to the jury. This exhibit has not been made available to us. From the transcript we learn that it is a likeness of defendant. Counsel for defendant advised the court that it contained a notation: "St. Louis Metropolitan Police Department No. 97950 dated 9/27/72."

The State did not make use of this photograph during the direct examination of the victim. It was only after defendant, on two occasions in cross-examination, questioned the victim concerning the quality of the picture that the State had the picture marked and introduced into evidence. Upon admonishment of the court the prosecutor placed the exhibit under his file so as not to be in view of the jury. Later the State asked that the jury be permitted to see the picture but only after the notations had been covered up. The State offered to let defendant's counsel cover any objectionable matter as he desired. The request to

7. " 'I mean a man who was under the surveillance and under the suspicion of the police; a man that was liable to be picked up by the police, or arrested by the police.' " (125 S.W. 458 at 459).

8. "Upon objection made by the defendant, the court should have promptly rebuked counsel for the state for his unwarranted remarks, and directed the jury to disregard them. Failure to do so was error." (125 S.W. 458 at 460).

show the photograph to the jury was denied.

Thereafter defendant cross-examined Detective Bell with respect to the victim's statement as to the quality of Exhibit 2. At the close of the State's case permission to pass Exhibit 1, a photograph of the line-up, was requested and granted. The prosecutor stated, "Your Honor, for the record, State's Exhibit No. 2, a photograph, a smaller photograph, which is (sic) likewise, been admitted into evidence, for the record; I would ask permission to pass this to the jury." The court immediately denied the request. Defendant objected on the ground that counsel had been admonished not to show the picture to the jury and asked for a mistrial. The court in denying the request for a mistrial took note of the fact that Exhibit 2 was held in such a manner as not to be discernible to the jury, and thus had not been displayed to the jury. The order of the court had not been disobeyed; there was no basis for the objection.

In view of the fact that defendant questioned the victim's characterization of Exhibit 2 as hazy, the court in its discretion could have permitted the State to show the picture to the jury. Such a photograph was properly shown to the jury in *State v. Childers*, 313 S.W.2d 728, 731[5] (Mo.1958). Failure to permit the jury to view the photograph permitted defendant the opportunity to adroitly argue to the jury that he had seen the questioned picture and that "it's not a hazy picture."

■ In oral argument reference was made to the abundance of State's evidence with respect to the identity of defendant. However, this is a one issue case. As defense counsel phrased it in closing argument, "The only question in this case, or the issue . . . is, was Pat Harris the man who robbed Donald Bledsoe, on Labor Day?" The issue of identity of defendant was in the case from the Motion to Suppress Identification, which was heard on the day the trial began, through final argument.

Defendant's skillful cross-examination of all of the State's witnesses was directed exclusively to the question of identification. The memory of the victim was questioned as it affected his identification of the defendant. Defendant's attack upon the identification was supported by alibi witnesses.

The State had the burden of proving, beyond a reasonable doubt, the principal element at issue in this case, the identity of defendant as one of the persons who robbed Mr. Bledsoe. *State v. Hubbard*, 351 Mo. 143, 171 S.W.2d 701, 707 (1943). It was the duty of the State to present as strong a case on identification as it could fairly present.

■ Although, there was an abundance of State's evidence to identify defendant, the State "should not be unduly limited as to the quantum of its proof." *State v. Moore*, 303 S.W.2d 60, 66 (Mo.1957).

Finding no prejudicial error the judgment of the trial court is affirmed.

SMITH, C. J., and SIMEONE and GUNN, JJ., concur.

CLEMENS, J., dissents in separate opinion.

KELLY and McMILLIAN, JJ., concur in Judge CLEMENS' dissent.

CLEMENS, Judge (dissenting).

Am compelled to dissent—on the ground the trial court permitted the State to deliberately and persistently portray defendant Pat Harris as a "police character" whose "mug shot" was in police files. In the jury's eyes, this could well have demolished defendant's right to a fair trial under a presumption of innocence. As said by Judge Hollingsworth in *State v. Barton*, 361 Mo. 780, 236 S.W.2d 596[1, 2] (banc 1951), and repeated in *State v. Reese*, 481 S.W.2d 497, l. c. 499 (Mo. banc 1972): "This is no mere procedural presumption. It is substantive, basic; there is no exception."

Defendant contends on appeal "the court erred in denying defendant's repeated motions for mistrial following the repeated admission of evidence of prior crimes of the defendant." This point relied on is followed by sub-paragraphs specifying prosecutorial references to "mug shots" and "photographs of subjects on file in our [police] department. The sole issue on appeal is whether these references to police department photographs or mug shots [1] throughout the trial prejudiced defendant's right to a fair trial.

The first reference to photo identification at trial came in the State's opening statement. The prosecutor stated: "Officers Whitfield and Bell, who are Detectives assigned to the Burglary and Robbery Division, of the St. Louis Metropolitan Police Department, will tell you that they brought out several photographs or so-called mug shots of people on file with that division, with the burglary and robbery division, and I suppose, set them on a table or whatever, and asked him, if any of these were one of the people that held him up in that vacant house or in that alley." The prosecutor noted the victim chose defendant's photograph from those shown him.

Defense counsel at that point stated at the bench, "Your Honor, Mr. Kavanaugh just introduced evidence, information about the defendant, Pat Harris, in the police files. It is an indication of another offense, which is totally inadmissible and highly prejudicial, and I will request a mistrial for that reason." The court denied a mistrial.

A second incident arose during the State's questioning of the robbery victim: "Q: How many days after you were robbed did the detective come out to your house? A: They came that next day. They came about twice, to show me mug shots." [2] Defense counsel immediately told the court at the bench, "The Circuit Attorney . . .

specifically referred to mug shot again. He is referring to another crime." The court denied counsel's request for mistrial but belatedly sustained his objection to the words "mug shot" and cautioned, "Use 'pictures.'" The prosecutor continued questioning the victim about the photographs the detective brought—how many there were, the race and sex of those depicted, and whether one was clear or blurry.

At that point the State had the mug shot photograph marked "State's Exhibit No. 2." The court called both attorneys to the bench, where defense counsel stated the pictures had the notation, "St. Louis Metropolitan Police Department # 97950, 9/27/72." Counsel added he considered the marked picture an indication of prior crime "highly prejudicial" to defendant. The court stated it would not permit the picture to be shown, but would allow questioning about it and cautioned the State to refer to it "as just a picture." Defense counsel refused the court's offer of a curative instruction as "too late . . . they already have the inference of another crime." The court again stated, "We will use the word, picture."

During further questioning about the picture, the trial court admonished the prosecutor to put it "under your file, so that it won't be lying on the desk . . . ." When defense counsel objected to admitting the picture into evidence, the court stated it should not be shown to the jury.

Immediately thereafter, the State began questioning a witness identified as a detective assigned to the Burglary and Robbery Division: "Q: Where did you talk with him [the victim]? A: I went to his home. Q: Did you bring any materials with you? A: Yes, I did. Q: What were they? A: Photographs of *subjects on file in our department.*" (Our emphasis). The court denied a request for a mistrial and again cautioned the State to refer to "photographs."

1. "Mug shot. A photograph of a person's face, usually used of official police photographs." Webster's Unabridged Dictionary, Third Edition.

2. We cannot presume State's counsel did not know what its principal witness would answer.

Another episode occurred when the State's attorney in the jury's presence sought leave to pass to the jury the "smaller photograph" to which defendant's objection had been sustained. The court denied defendant's motion for a mistrial and stated, "at the time the prosecutor stood up, he held the photograph . . . against his body, and it was not discernible by the jury."

Finally, in closing argument, the prosecutor again stressed defendant's photograph, telling the jury, "Two days later, these police officers, these detectives come out with their pictures they had, from downtown, showed him a series of pictures." The prosecutor added, "You only saw the one photograph, the photograph of the lineup." The comment called added attention to the fact the court had refused to let the jury see the mug shot which had previously been referred to. It seems naïve to suggest, as does the majority opinion, that the jury might have believed "mug shots" bore no criminal connotation, particularly so when identified by a police officer from the Burglary and Robbery Division as "photographs of subjects on file in our department." A more logical inference is that the photograph depicted a man who had been previously arrested for if not convicted of burglary or robbery. This basic rule of law prohibiting proof of a defendant's other criminal acts is violated not only by evidence he did commit a specific crime but by statements of counsel or witnesses implying the defendant's prior illegal conduct, thereby diluting his presumed innocence of the crime for which he is being tried. Thus, the majority opinion is out of harmony with a long line of Missouri cases.

Prosecutorial reference to a defendant's other illegal acts has been uniformly condemned by reversals. In *State v. Leonard*, 182 S.W.2d 548[4–8] (Mo.1944), defendant was charged with unlawfully selling liquor at her home and in argument the prosecutor referred to defendant's home as a bawdy house. Reversed. In *State v. Ingram*, 286 S.W.2d 733[4–6] (Mo.1956), defendant was charged with a robbery and a policeman testified he had arrested defendant for a homicide. Reversed. In *State v. Tillman*, 454 S.W.2d 923[5, 6] (Mo.1970), defendant was charged with carrying concealed weapons in his car. In opening statement the prosecutor said the weapons were found when highway patrolmen encountered defendant and arrested him for a murder and robbery. Reversed. In *State v. Hancock*, 451 S.W.2d 6[1–3] (Mo.1970), defendant was charged with burglary of a clothing store. The State showed the stolen articles were found in defendant's car, but over objection also identified other objects found in the car as the fruits of other burglaries; despite the trial court's oral and written instructions to the jury to disregard the extraneous evidence the Supreme Court reversed. In *State v. Clancy*, 225 Mo. 654, 125 S.W. 458[4] (1910), a case closely akin to ours, the court applied the rule excluding reference to other offenses. There, in closing argument, the prosecutor referred to defendant as a "police character." Although defendant's objection was sustained the Supreme Court reversed the conviction and declared, "the court should have promptly rebuked counsel for the state for the unwarranted remarks, and directed the jury to disregard them."

Even more akin to our case, in *State v. Baldwin*, 317 Mo. 759, 297 S.W. 10[10] (banc 1927),[3] a police witness identified a photograph of defendant as one "kept in the Bertillon room, police headquarters." Reversing, the court held: "This made this evidence highly prejudicial. The place where the picture was kept was utterly immaterial upon the question as to whether or not it was the picture of defendant. Nor did it tend to prove defendant committed the crime. It could be relevant to no issue in the case, and the court should have promptly sustained the objection that the evidence was irrelevant and immaterial.

**3.** Overruled on other grounds; *State v. Rima*, 395 S.W.2d 102[3] (Mo. banc 1965).

Its failure to do so was prejudicial and reversible error." Here, the effect of repeated references to mug shots and photographs in police department files was no less prejudicial since they permitted an inference of past crime. Our courts rigidly scrutinize any such evidence, since it has a dangerous tendency to raise a spurious inference of guilt in the minds of jurors. *State v. McElroy*, 518 S.W.2d 459[6] (Mo.App.1975). See also *State v. Holbert*, 416 S.W.2d 129[6] (Mo.1967), and *State v. Carter*, 475 S.W.2d 85, 88 (Mo.1972), citing *State v. Reese*, supra.

The record in this case should convince us the repeated references to police photographs did inform the jury of defendant's prior criminal involvement with police and rendered improbable a fair trial for the robbery charged. The jury's awareness of defendant's prior criminal involvement clouded the single issue of his guilt or innocence of the robbery charge for which he was being tried. We should not say the jury's verdict was not influenced by its awareness that this defendant was a police character. In the words of Chief Justice Warren in *Spencer v. Texas*, 385 U.S. 554, l. c. 575, 87 S.Ct. 648, l. c. 659, 17 L.Ed.2d 606 (1967): "Of course it flouts human nature to suppose that a jury would not consider a defendant's previous trouble with the law in deciding whether he has committed the crime currently charged against him."

We need not decide whether any one of the four "police character" references, standing alone, warranted a mistrial. As the State layered each one atop another, it should have become apparent to the trial court that an indelible brand had been placed upon defendant that could be erased only by granting a mistrial.

Earlier Missouri "mug shot" cases have dealt with facts not quite akin to our case. In *State v. Rima*, 395 S.W.2d 102[3] (Mo. banc 1965), a witness testified he based in-court identification on his observations at the crime scene, and added that he had chosen defendant's photograph from " 'mug books' at the police station." Defense counsel did not object, and his later requests for a curative instruction or a mistrial were denied. But *Rima* is factually distinguishable from this case. In that case, there was an uninvited mention of police photographs to which there was no timely objection. Here, there were repeated references to such photographs and timely objections. In *Rima* the only person who referred to police "mug" photos was one witness, the victim of the crime; in our case, the prosecutor made direct and indirect references to defendant's police pictures and so framed questions to the victim and a police officer as to elicit a similar reference from them. Had there been in our case merely one such reference, made during a witness' testimony relating the process by which he identified the defendant, any prejudice ensuing therefrom would have been minimal and would not have mandated reversal. *State v. Rima*, supra; *State v. Donnell*, 430 S.W.2d 297[16, 17] (Mo.1968); *State v. Daegele*, 302 S.W.2d 20[6] (Mo.1957); *State v. Childers*, 313 S.W.2d 728[5] (Mo.1958).

We have also considered our decision in the recent case of *State v. Rutledge*, 524 S.W.2d 449 [l. c. 457–458] (Mo.App.1975). There, in closing argument the prosecuting attorney used the term "mug shot." On defense objection, "the prosecutor quickly corrected himself" and the trial judge instructed the jury to disregard the prosecutor's comments. We held that while we did not condone the mug shot reference it did not rise to the level of trial error requiring a mistrial. Here, the volume of the prosecuting attorney's persistent mug shot references, direct and implied, was greater than in *Rutledge*, and here no corrective action was taken. Both *Rima* and *Rutledge* are distinguishable.

Where, as here, there are repeated references to the presence of defendant's photograph in files of the robbery division of the police department, the cumulative effect of such references in view of their number and the context in which they occurred could hardly have failed to prejudice defendant.

We think the caution uttered by the court in *State v. Tyler*, 454 S.W.2d 564[7] (Mo. 1970) warrants repetition: "So long as the testimony or photograph does not identify the party thus pictured as a criminal there can be no valid objection to an identification based on such a picture." The implication is that there is a valid objection to "such a picture" if the testimony concerning it implies defendant is a criminal. Because of the prosecutor's opening remarks, his leading questions to two witnesses, and his effort to pass the picture to the jury despite the judge's admonitions to hide the picture, the jury reasonably could infer defendant was a criminal even though not shown the mug shot with its police department identification numbers.

The majority opinion faults defense counsel for tardiness and inexactness in objections in the trial court and in the points briefed here. These are arguable, but even so, defendant's complaints concern "substantial rights resulting in manifest injustice," and therefore cognizable by us under the plain error rule, Rule 27.20.

This conclusion is not based on any one of defendant's complaints. The State's trial conduct led the jury down the mental path of trying a criminal, not a presumptively innocent citizen. So tarnishing defendant cannot be said to be harmless in its cumulative effect. As said in *Faught v. Washam*, 329 S.W.2d 588[30] (Mo.1959): "Without undertaking to determine whether any single matter of which we have treated, standing alone, would constitute reversible error . . . we are firmly of the opinion that, in their totality, they do. . . ." Appellate consideration of the cumulative effect of trial errors is particularly appropriate in criminal cases. See *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524[5] (banc 1947), and *State v. Webb*, 254 Mo. 414, 162 S.W. 622[7–8] (1914).

The State's challenged conduct went beyond the defendant's identification; it portrayed him as a "police character," thereby demolishing the mantle of innocence to which he was constitutionally entitled.

We should grant defendant a new trial.