STATE of Missouri, Plaintiff–
Respondent,

v.

Timmy Lee DEPRIEST, Defendant–
Appellant.

Timmy Lee DEPRIEST,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17017, 17410.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 12, 1991.

Motion for Rehearing or Transfer
Denied Dec. 31, 1991.

Application to Transfer Denied
Feb. 25, 1992.

Susan L. Hogan, Asst. App. Defender, Office of State Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

Defendant, Timmy Lee Depriest, was convicted after jury trial of assault of a law enforcement officer in the first degree, in violation of § 565.081, RSMo Supp.1989, and armed criminal action, in violation of § 571.015 RSMo 1986.[1] He was sentenced to twenty years' imprisonment on the charge of assault and fifteen years' imprisonment on the charge of armed criminal action, both to be served consecutively. Defendant filed a direct appeal from those convictions and a Rule 29.15 motion, Missouri Rules of Court (1991).[2] After an evidentiary hearing the motion was denied and Defendant appealed from that denial. Pursuant to Rule 29.15(*l*), the appeals have been consolidated.

Defendant claims error in four points relied on, with the first three relating to the criminal trial. None of Defendant's points challenge the sufficiency of the evidence. We recite the facts in the light most favorable to the verdict and only as the evidence relates to Defendant's points.

In late December 1989 officers of the Springfield Police Department were advised warrants were outstanding for the arrest of Defendant. In at least two briefing sessions, officers were given a police "flier" which displayed a photograph of Defendant, along with his description. Officers were also provided with several photographs of Defendant that recently had been taken by a surveillance camera at a local Sears store.

On December 28, 1989, Corporal Larry Robinson was on patrol in the downtown area of Springfield. He sighted a man who matched the description of Defendant. Upon sight of the patrol car, the suspect ran and Corporal Robinson gave chase in his patrol car into a nearby parking lot. Robinson jumped out of the patrol car as the suspect was scaling a retaining wall. Robinson yelled, "Halt, police, or I'll shoot," but the suspect climbed over the wall and fled down an adjoining alley. Robinson continued the chase on foot and called for back-up to assist in the apprehension.

After Robinson lost sight of the suspect, he guessed that the suspect had run into a nearby parking lot and was hiding behind a trash dumpster. As the officer squeezed between the dumpster and an adjacent building, the suspect raised up from behind the dumpster and shot Corporal Robinson in the shoulder from about five feet away. The officer radioed that he had been shot and then crawled around the corner to safety. He subsequently heard four more shots from behind the dumpster, and the suspect again took off running.

Defendant was apprehended and taken into custody after pursuit by several other police officers. Defendant was captured

---

1. All statutory references are to RSMo 1986 unless otherwise indicated.

2. All rule references are to Missouri Rules of Court (1991) unless otherwise indicated.

with the gun, in his hand, used to shoot Corporal Robinson.

Later, Defendant was advised of his Miranda rights at the police station and invoked his right to remain silent. Afterwards, Defendant asked Detective Coffman about Robinson's condition and stated he was sorry he had shot the officer and hoped that Robinson "was all right." Defendant told Detective Ijames that he was glad Robinson would be "all right," and that he "just didn't want to go back to prison." The latter statement was admitted into evidence over Defendant's objection.

Kelly King, a Sears employee, testified over Defendant's objection that she monitored Defendant on a security camera in the Sears store on December 23, 1989. Photographs from the Sears security camera had been supplied to Springfield police officers during briefing sessions after December 23, 1989.

Defendant did not testify. His evidence consisted only of the testimony of a forensic-evidence technician who worked at the Springfield Police Department Crime Laboratory. The lab technician testified that while taking Defendant's fingerprints, Defendant repeatedly stated he was very sorry that Corporal Robinson was shot and wished it had never happened. Defendant stated he was scared at the time.

Defendant filed a *pro se* Rule 29.15 motion for postconviction relief. The court appointed a public defender to represent Defendant and an amended motion was filed. After an evidentiary hearing, the court issued Findings of Fact and Conclusions of Law denying relief to Defendant.

■ Defendant states in his first point the trial court erred in admitting into evidence Defendant's statement, "I just didn't want to go back to prison," and State's Exhibit 14 characterized by Defendant as a "mugshot." Defendant claims he was denied his right to a fair trial and due process of law guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 10 and 18(a) of the Missouri Constitution. He contends the statement raised the inference of prior convictions, admissible for impeachment purposes only if Defendant testified.

Defendant relies on cases which stand for general statements of law concerning a criminal defendant who testifies with prior convictions. *State v. Shisler,* 752 S.W.2d 447, 451 (Mo.App.1988), holds that when a criminal defendant testifies, the state may impeach him with his prior convictions. *State v. Sanders,* 634 S.W.2d 525, 527 (Mo. App.1982), teaches the state may not show details of the offense or use the convictions to suggest guilt of the offense presently charged. Defendant's reliance on *Shisler* and *Sanders* is misplaced. Such cases do not answer the question before us.

"Evidence of a crime independent and unconnected with the crime charged is inadmissible unless it tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or the identity of the person charged." *State v. Sellers,* 710 S.W.2d 398, 401 (Mo.App.1986). Defendant's statement that he "just didn't want to go back to prison" could be interpreted as evidence of a prior crime. Such a crime would be independent and unconnected with the charge of assaulting Corporal Robinson. However, the statement certainly does tend to establish Defendant's intent.

A necessary element of the state's case was evidence that Defendant "knowingly" attempted to cause serious injury to Corporal Robinson. § 565.081, RSMo Supp.1989. The only defense offered by Defendant was that he had no intent to cause serious physical injury to the officer. A jury could reasonably infer that Defendant intended to inflict or attempt to inflict serious physical injury on the officer to avoid apprehension and thus, a return to prison.

The facts in *Sellers* are strikingly similar to the instant case. There, appellant was charged with assault in the second degree, § 565.060 RSMo Supp.1984, and three other crimes. A state witness testified that during appellant's apprehension he said he wasn't "going to go back to jail." The court determined that even though appel-

lant's statements "could be interpreted as evidence of prior crimes, the statements tended to prove that appellant 'knowingly' attempted to cause serious physical injury to another, a necessary element of the state's case." *Id.* at 400. The court concluded that appellant's statements at the time of the offense were relevant to show his intent.

In *State v. Mallett,* 732 S.W.2d 527 (Mo. banc 1987), defendant was convicted of first degree murder, § 565.020, of Missouri State Highway Patrolman James M. Froemsdorf. Defendant contended the trial court erred in admitting evidence that he robbed a jewelry store in Texas the month before the trooper was murdered. The Court stated:

Evidence of commission by defendant of crimes separate and distinct from the crime for which he is charged is generally inadmissible. But such evidence is generally admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. Evidence of other crimes should be admitted under one of these exceptions only when the prejudicial effect of the evidence is outweighed by its probative value. The balancing of prejudicial effect and probative value lies within the sound discretion of the trial court.

The evidence presented here of defendant's robbery of the Texas jewelry store was admissible to show defendant's motive for killing Trooper Froemsdorf. Defendant's knowledge that he would quite probably be returned to Texas to face aggravated robbery charges for acts he committed while already in violation of his probation gave him a very discernible reason to kill Trooper Froemsdorf. Although the introduction of this evidence put before the jury evidence of a crime for which defendant had never been convicted, the probative value of the evidence was greater than any prejudicial effect.

*Id.* at 534–35 (citations omitted).

As in *Mallett,* Defendant here was undoubtedly aware of warrants for his arrest. The jury could reasonably infer Defendant ran to avoid arrest, and his motive to shoot Corporal Robinson was to avoid a return to prison. We hold the probative value of the evidence was greater than any prejudicial effect. Defendant's statement was admissible.

■ Defendant next contends the "mugshot" (State's Exhibit 14) raised an inference of prior incarceration and wrongdoing. However, it is only Defendant who denominates the exhibit as a "mugshot." First, State's Exhibit 14 portrays only a shoulder-length frontal view of a white male. Information beneath the photograph gives Defendant's name, date of birth, physical description and a description of the clothing last seen on Defendant. No other information appears which would necessarily cause the jury to conclude the exhibit was in fact a "mugshot." Secondly, no inference was made to the jury that State's Exhibit 14 was a "mugshot." In a bench conference on Defendant's objection, outside the hearing of the jury, Defendant's counsel referred to the exhibit as a "mugshot." The exhibit was introduced by the testimony of Corporal Robinson who described it only as a "picture" and later as a "flier."

Even if we accept Defendant's characterization of the exhibit as a "mugshot," the inference Defendant attempts to make is futile. The rule relating to mugshots is stated in *State v. Harris,* 534 S.W.2d 516 (Mo.App.1976). Defendant must show the use of the term "mugshot" constitutes evidence of prior crimes by one of two alternatives.

First he would have the burden of proving that all mug shots or photographs on file with the police department are photographs of persons who had committed prior crimes....

Alternatively the defendant would have to prove that the average juror erroneously believes that persons whose photographs are on file with the police

department have committed other crimes. *Id.* at 519–20.

Here, Defendant simply asked us to assume that State's Exhibit 14 is a "mugshot" and therefore is evidence of prior crimes. We cannot make such assumption because Defendant did not attempt to prove either alternative required by *Harris.* Further, the court in *State v. Hamell,* 561 S.W.2d 357, 361 (Mo.App.1977), stated: " 'Mugshots' are in themselves neutral and do not constitute evidence of prior crimes and offenses," citing to *State v. Harris, supra.* Point I is denied.

■ Defendant's next point complains of error in overruling Defendant's objection to the testimony of Kelly King. She testified of monitoring Defendant on a Sears surveillance camera. His complaints concerning King's testimony are identical to those in his first point with the additional contention that the testimony was irrelevant.

Defendant argues King's testimony was evidence of other crimes which raises an improper inference that Defendant was under surveillance for committing some offense. Defendant only cites cases on general propositions of law similar to the cases cited under Point I.

We find nothing in the record which would cause a jury to infer that only people guilty of crimes are monitored by a Sears surveillance camera. If Defendant's inference is correct, all persons monitored by their bank surveillance camera are at least criminal suspects. We do not believe Defendant's inference is correct. Actually, King only testified that surveillance cameras are used to monitor the floor and several people are watched each day.

Even accepting Defendant's inference as correct, we find no prejudice to Defendant by King's testimony. State's Exhibit 1–A was a still photograph of Defendant taken from the Sears surveillance camera and admitted into evidence. The photograph depicts Defendant viewing merchandise and shows his attire including his black and white tennis shoes. King also identified Defendant in court as the person in the exhibit and confirmed she personally observed the black and white tennis shoes on December 23, 1989. Defendant's attire in the exhibit was a distinct aid to Corporal Robinson in his identification of Defendant five days after the exhibit was made. The police flier only portrayed Defendant from his shoulders up. Both the flier and State's Exhibit 1–A were supplied to officers at the earlier briefing sessions. When Corporal Robinson first observed Defendant, he especially noted Defendant was wearing black and white tennis shoes, shown in State's Exhibit 1–A, which caused him to believe the suspect was Defendant.

We have discussed the general rule and exceptions on this issue under the previous point. *Mallett,* 732 S.W.2d 527; *Sellers,* 710 S.W.2d 398. One of the exceptions relates to identity of the person charged. Evidence of another crime is admissible if it tends to establish the identity of the person charged with commission of the crime on trial. *Id.* at 401; *Mallett* at 534.

Evidence of another crime unrelated to the crime in issue may be prejudicial and, thus, inadmissible, because this evidence may result in a conviction based on a crime with which the defendant is not charged. Exceptions have been made to this general rule. Evidence of another crime is admissible if it tends to establish "the identity of the person charged with the commission of the crime on trial." The key issue in this inquiry is relevance balanced against prejudice. The trial court exercises its discretion to determine whether the evidence of another crime is relevant and, if relevant, whether its possible prejudice outweighs its relevance.

*State v. Ford,* 677 S.W.2d 352, 355 (Mo. App.1984) (citations omitted).

We find the trial court did not abuse its discretion in admitting King's testimony. Her testimony was relevant to show a basis upon which Corporal Robinson first properly identified Defendant. The probative value of the evidence outweighs any prejudicial effect. Point II is without merit.

■ In his third point relied on, Defendant alleges the trial court erred in giving Instruction 4, patterned after MAI–CR 3d 302.04, defining "reasonable doubt" as "proof that leaves you firmly convinced of

the defendant's guilt." Defendant admits this point was not properly preserved for our review because trial counsel did not object at trial or in the motion for new trial to submission of Instruction 4. He asks us to review as a matter of plain error under Rule 30.20.

Defendant argues Instruction 4 allowed the jury to find him guilty based upon a degree of proof below that required by the due process clause. Defendant ignores *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), which held the predecessor to MAI–CR 3d 302.04, MAI–CR 2d 2.20, properly instructs the jury in evaluating the evidence and making a determination of guilt or innocence.

Despite *Antwine*, Defendant asks this court to reverse and remand for a new trial in light of *Cage v. Louisiana*, — U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). As was stated in *State v. Lewis*, 809 S.W.2d 878 (Mo.App.1991), where defendant made an identical attack on MAI–CR 3d 302.04, based on *Cage*, "We have no authority to consider the request. Art. V, § 2 Constitution of Missouri. Accordingly, we find no error, plain or otherwise." *Id.* at 880. Point III is denied.

Defendant's last point relates to denial of his Rule 29.15 motion. He claims his trial counsel was ineffective because she failed to advance a viable defense at trial, conceded during closing argument Defendant shot Corporal Robinson, and only contested the issue of Defendant's intent.

■ Our review is to determine if the trial court's determination is clearly erroneous. Rule 29.15(j). Defendant (movant) has the burden of proving his contentions by a preponderance of the evidence. Rule 29.15(h). Deference is given to the trial court's determination of the credibility of the witnesses. *Brummell v. State*, 770 S.W.2d 379, 380 (Mo.App.1989).

At the hearing on the motion only Defendant's trial counsel testified. She stated her belief that Defendant's intent was the only reasonable defense under the circumstances of the case. This trial strategy accounts for her closing argument where she emphasized the minor shoulder injury received by Corporal Robinson. She logically argued the shot came from five feet away, and a person with an intent to do serious physical harm could have aimed for vital areas. She had digested unassailed trial testimony that Defendant shot the officer and Corporal Robinson's explicit identification of Defendant as the shooter.

■ To prevail on a claim of ineffective assistance of counsel, Defendant must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under the circumstances, and (2) the Defendant was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). "Ineffective assistance of counsel will not lie where the conduct involves the attorney's use of reasonable discretion in a matter of trial strategy, and it is the exceptional case where a court will hold a strategic choice unsound." *State v. White*, 798 S.W.2d 694, 698 (Mo. banc 1990).

In this case, the motion court found that defense counsel employed trial strategy and found no ineffective assistance of counsel. "The motion court's findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made." *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990).

■ The record strongly indicates defense counsel had a strategic reason for conceding Defendant shot Corporal Robinson and only contesting the issue of his intent in doing so. We are unable to say defense counsel did not exercise sound judgment in her trial strategy. Finally, Defendant has failed to demonstrate any prejudice from defense counsel's trial strategy because no evidence was presented on that issue. Point IV is denied.

Judgment affirmed.

FLANIGAN, C.J., and SHRUM, P.J., concur.